GILBERT W. CARLSON, PLAINTIFF-RESPONDENT, v. JAMES C. HANNAH, DEFENDANT-APPELLANT, AND FRANK D. McHUGH, DEFENDANT-RESPONDENT.

Argued November 6, 1950—Decided January 8, 1951.

*Mr. Archibald Kreiger* argued the cause for the appellant (*Mr. Samuel L. Biber,* attorney).

*Mr. Abraham J. Slurzberg* argued the cause for the plaintiff-respondent Gilbert W. Carlson (*Mr. Harold K. Smith,* attorney).

*Messrs. Paladeau & Foley,* attorneys, presented a brief on behalf of the defendant-respondent, Frank D. McHugh.

The opinion of the court was delivered by

ACKERSON, J. The record on this appeal discloses that on April 9, 1940, plaintiff, Gilbert W. Carlson, and Galler Beverages, Inc. (hereinafter referred to as Galler), manufacturer of a carbonated beverage known as "7 Up," entered into a contract whereby plaintiff was to have the exclusive distributorship of the beverage within the territory comprising all of the City of Paterson northerly of Market Street and a number of adjacent townships and boroughs. Plaintiff's remuneration was to depend upon the differential between scheduled purchasing and selling prices. The contract also provided that the distributor was to furnish his own truck and could not transfer his rights under the contract without Galler's consent.

Later, while in the performance of this agreement, plaintiff ascertained he was about to be drafted into the United States Army and accordingly, on May 22, 1942, with Galler's consent, he entered into a written contract with the defendant, James C. Hannah, whereby Hannah was to operate plaintiff's territory under the latter's agreement with Galler, pay plaintiff three cents commission on each case of beverage sold, and maintain his truck. This agreement further specified it was to be in force from the time of plaintiff's induction into the army until his discharge therefrom and also provided in paragraph 8 thereof as follows:

"It is hereby agreed that Frank McHugh shall have the power to alter this contract with the consent of the party of the second part [Hannah] when the same is deemed necessary."

Contemporaneously with the execution of this agreement, plaintiff gave the said McHugh a power of attorney to act for him and do everything "requisite and necessary to be done in said distributorship."

Shortly thereafter Carlson was inducted into the army and Hannah and McHugh proceeded to operate under the agreement and power of attorney respectively. In August, 1944, business having increased, Galler required that an additional truck be put in operation—as it had the right to do under its contract with Carlson—and McHugh arranged for the lease of such a truck from Galler and Hannah engaged a driver to operate it in that portion of Carlson's territory lying in the northern section of Passaic County thereafter referred to as the "up-county" route. The remainder of the territory in and about the City of Paterson continued to be serviced by Hannah.

Early in the summer of 1944 Hannah, expressing concern about his security after Carlson's return from service, began demanding of McHugh that he, Hannah, be assured of a part of the territory in which Carlson had the exclusive distributorship upon the latter's return from service. At first McHugh refused these demands, then Hannah threatened to cease operating under the existing agreement unless his demands were met. Finally, as the result of this threat, aided by pressure from Galler, and fearing, as he claimed, that Carlson's loss under war-time conditions would be great if some such arrangement was not made, McHugh acceded to Hannah's demands. Accordingly on September 2, 1944, McHugh, purporting to act under his power of attorney and paragraph 8 of the aforesaid agreement of May 22, 1942, between Carlson and Hannah, and with Galler's consent, entered into a written contract with Hannah providing that the original agreement of May 22, 1942, was to remain in full force and effect until Carlson's discharge from the army and the resumption of his duties as a distributor, at which time there would be "assigned outright" to Hannah a specified part of Carlson's original territory.

Thereafter Hannah continued to service Carlson's terri-
tory with the assistance of the driver who had been engaged
to look after the "up-county" route. Carlson returned from
service overseas in late August, 1945. On September 5, 1945,
while on terminal leave, he visited McHugh and learned for
the first time of the so-called "supplementary contract" which
the latter had made with Hannah on September 2, 1944.
Plaintiff expressed surprise and disappointment and shortly
thereafter expressed his disapproval of this contract to
both McHugh and Hannah. At the September 5 meeting
McHugh made an informal accounting and turned over to
Carlson approximately $2,190 representing commissions col-
lected from the operation of the distributorship, which appar-
ently was satisfactory except that objection was made to cer-
tain deductions therefrom for the cost of repairs to the truck,
insurance premiums, etc., which totaled $970.85.

Early in December, 1945, Carlson notified the defendants
that he would resume his distributorship on December 10,
1945. The driver operating the second truck in the "up-
county" district was notified that his services would be ter-
minated on that date. At that time Hannah returned plain-
tiff's truck and plaintiff resumed distribution in the Paterson
area which Hannah had been personally servicing. Plaintiff
told Hannah that he could service the "up-county" route on
the same basis as the discharged driver, viz.: payment of a
two-cent commission on each case of beverage sold, but inas-
much as the supply of merchandise was low at that time,
Carlson said he would waive commissions until conditions
improved, as had been done with the former operator. This
is disputed by Hannah who claims that he took over the route
in his own right and it appears that no commissions were
paid. However, on April 1, 1946, plaintiff received a new
and larger quota of beverage to be distributed in the entire
territory covered by Carlson and Hannah, part of which quota
Carlson allocated to Hannah advising him at the same time
that payment of commissions at the above-mentioned rate
would become effective immediately. Hannah rejected this
proposition, insisting that his agreement of September 2, 1944,

with McHugh gave Hannah outright the exclusive distribu-torship in the "up-county" territory without the necessity of paying any commission for that privilege. Carlson refused to honor the agreement. Despite their dispute the parties have continued to service the separate routes.

In December, 1945, negotiations were begun between Galler and a union which in March, 1945, had become the bargaining agent for the distributors, and this eventually resulted in a contract between Galler and the union. In the course of these negotiations a dispute arose as to whether or not the distribu-tors who had theretofore obtained from Galler exclusive dis-tributorships had such property rights in the territories as-signed to them as would enable them to sell or assign their rights therein without Galler's consent. The award, dated March 11, 1946, was against the contention of the distributors but it was excluded at the trial of the instant case as irrelevant to the issues raised by the pleadings and the pretrial order. Parenthetically we agree with this ruling as will hereinafter appear.

While the foregoing negotiations were in progress the dis-tributors were asked to submit descriptions of the territories being serviced by them respectively and that turned in by the plaintiff included only the Paterson route then being serviced by him personally and not that assigned by McHugh to Hannah. This apparently was done on the assumption that he was being asked to describe only the territory per-sonally served by him at that time and it appears that during the aforesaid negotiations plaintiff continued to assert his claim to the whole territory both to Galler and the union officials.

It was Galler's practice to change its beverage quotas every three months and on July 1, 1946, it allotted separate quotas to plaintiff and Hannah for the respective areas then being personally serviced by each of them, but this was done without plaintiff's consent. In August, 1946, the union and Galler entered into an agreement which described Carlson and Han-nah as having independent territories, although Carlson tes-tified at the trial herein it was understood that the agreement

was not to prejudice any rights which he might have against Hannah and that a certain clause therein was intended to effectuate this understanding. This agreement between Galler and the union was renewed in June, 1948.

The present action was begun on December 19, 1946, by the filing of a complaint in two counts against Hannah and McHugh. The principal relief sought in the first count is a determination that the contract of September 2, 1944, between Hannah and McHugh is null, void and of no effect on the grounds that it was beyond the latter's authority to make, was without consideration, and executed with *mala fides,* and a further prayer asked for a discovery and accounting of the profits received by the defendants, or either of them, arising from the operation of the distributorship from May 22, 1942, on, and an injunction to permanently restrain Hannah from operating in any part of the territory originally assigned to the plaintiff by Galler. The second count of the complaint is not involved in this appeal. It related to the alleged damage to and disrepair of plaintiff's truck while in Hannah's use. Defendant Hannah filed an answer, later amended, denying generally the allegations of the complaint, without setting up any separate affirmative defenses, but containing a counterclaim asking for the assignment to him of the territory specified in his agreement of September 2, 1944, with McHugh. The latter's answer was, in effect, a general denial and an assertion of the validity of the last mentioned agreement.

The pretrial order limited the issues to four in number: (1) whether the agreement of September 2, 1944, between McHugh (as attorney in fact for Carlson) and Hannah is binding upon the plaintiff and should be enforced or whether it should be rescinded; (2) whether the deductions amounting to $970.85 for repairs to the truck, insurance premiums, etc., were properly made; (3) whether Hannah failed to keep the truck leased to him by plaintiff in proper repair and if not the damages therefor; and (4) if the aforesaid agreement between McHugh and Hannah is invalid, whether the latter

is accountable to plaintiff for profits made in the operation of part of the route in question and the extent of such profits.

The case was tried on the issues thus defined, resulting in an interlocutory judgment dismissing the complaint as to the defendant McHugh on both counts and as to the co-defendant Hannah on the second count. But plaintiff prevailed against the defendant Hannah on the first count of the complaint and it was adjudged that the supplementary agreement of September 2, 1944, between McHugh and Hannah was null and void and should be rescinded and Hannah was ordered to account and pay to plaintiff the profits derived from the operation of the distributorship in question from April 1, 1946, to the time of the assessment of damages, but no permanent injunctive relief was granted.

An accounting was subsequently had and final judgment entered ordering Hannah to pay plaintiff the sum of $4,000 with costs. Hannah thereupon appealed to the Appellate Division from the whole of said judgment, both as to plaintiff and the co-defendant McHugh, and the appeal was certified here on our own motion.

The primary argument made by the defendant Hannah on this appeal is that the transfer of territory intended to be made by McHugh to Hannah under the disputed agreement of September 2, 1944, is valid and binding upon the principal Carlson because made by his agent under the latter's express or implied emergency powers, and that it was ratified by plaintiff permitting and representing to Hannah that he could operate thereunder until April 1, 1946, and thereafter until action was brought on December 19, 1946.

This presents the fundamental issue in the case as defined in the pretrial order, i. e., whether this contract is binding upon the plaintiff, or whether it should be rescinded as adjudged by the court below.

The power of attorney which accompanied the contract made between Carlson personally and Hannah on May 22, 1942, conferred upon McHugh authority to act for the plaintiff during his absence "* * * in all matters pertaining to my distributorship of a carbonated beverage known as '7 Up,'

\* \* \* giving my said attorney full power to do everything whatsoever, requisite and necessary to be done in said distributorship, \* \* \*." McHugh's authority with respect to the operation of the accompanying contract itself is expressed in paragraph 8 thereof, hereinabove quoted, giving him power "to alter" the contract when deemed necessary with the consent of the other party thereto.

Attorneys in fact created by formal letters of attorney are merely agents and their authority and the manner of its exercise are governed by the principles of the law of agency. 2 *Am. Jur. (Agency)*, § 26, p. 29. The power of an agent to bind his principal is limited to such acts as are within his actual or apparent authority. *Baurhenn v. Fidelity, etc., of Maryland,* 114 *N. J. L.* 99, 104 (*E. & A.* 1934). Such actual authority may be express or implied. Implied authority may be inferred from the nature or extent of the function to be performed, the general course of conducting the business, or from the particular circumstances of the case. Implication is but another term for meaning and intention; express authority given to an agent includes by implication, whether the agency be general or special, unless restricted to the contrary, all such powers as are proper and necessary as a means of effectuating the purposes for which the agency was created. *Sibley v. City Service Transit Co.,* 2 *N. J.* 458, 463 (1949); 2 *Am. Jur. (Agency)*, § 86, p. 70. Accordingly, it is well settled that, unless otherwise agreed, the authority of an agent to manage a business extends no further than the direction of the ordinary operations of the business, including authority to make contracts which are incidental to such business, are usually made in it, or are reasonably necessary in conducting it. But *prima facie,* authority to manage a business does not include authority to dispose of it in whole or in part. *Restatement, Agency,* § 73, Title F.

What then was the purpose of the instruments executed by plaintiff on the eve of entering the armed forces? Obviously he desired to preserve his business intact until his return and appointed McHugh to supervise it during his absence. Logically it is impossible to imply from the evidence

before us any authority in the agent McHugh to dispose of any part of his principal's business by gift, sale or otherwise, and thereby defeat the very purpose for which such instruments were created. The grant of power was intended to aid and facilitate the operation of the distributorship during plaintiff's absence and not to authorize its partition upon his return. *Restatement, Agency,* § 73, *Comment (b)*.

■ The agreement by the agent McHugh for the assignment of a sizeable portion of plaintiff's exclusive territory cannot be sustained under that provision in the earlier contract of May 22, 1942, authorizing the *alteration* thereof when deemed necessary. The questioned contract of 1944 does not purport to "alter" or change in any particular the earlier agreement between Carlson and Hannah (which "is to remain in full force and effect"), but is devoted entirely to stating a new and independent engagement to give Hannah a portion of plaintiff's territory at the termination of the earlier contract, *i. e.,* on plaintiff's return from service—an engagement to become effective *in futuro* and not *in præsenti*. Clearly this delegation of authority to "alter" did not contemplate an absolute transfer of territory to Hannah in order to induce him to perform his existing contract, and, by the same token, no consideration was given in law for the supplementary agreement since Hannah was only agreeing to do what he was already obliged to do under his original contract. *Levine v. Blumenthal,* 117 *N. J. L.* 23, *pp.* 26-28 (*Sup. Ct.* 1936); *Ross v. Orr,* 3 *N. J.* 277, 282 (1949).

■ Appellant further contends that McHugh's authority to contract for the assignment of the territory in question was implied under the doctrine of "emergency power." This principle is defined in the *Restatement, Agency,* § 47, as follows:

"Unless otherwise agreed, if after the authorization is given, an unforeseen situation arises for which the terms of the authorization make no provision and it is impracticable for the agent to communicate with the principal, he is authorized to do what he reasonably believes to be necessary in order to prevent substantial loss to the principal with respect to the interests committed to his charge."

It is important to note, however, that this rule is expressly qualified in the *Restatement* as applicable only where it is "impracticable for the agent to communicate with the principal" and ascertain his wishes before acting. *Sibley v. City Service Transit Co., supra, p.* 463.

The claimed emergency relied upon for the invocation of the foregoing rule is said to be the choice with which McHugh was confronted of either abandoning the entire route because of the uncertainty of replacing Hannah due to wartime shortage of manpower, or acceding to his demand for a part of the territory on plaintiff's return. We find no merit in this contention. Emergency in this connection means "a sudden or unexpected occurrence or condition calling for immediate action." *Frank v. Bd. of Education of Jersey City,* 90 *N. J. L.* 273, 278 (*E. & A.* 1916). The evidence discloses that continuous pressure to procure the questioned contract had been exerted on McHugh by both Hannah and Galler for upwards of two months before it was finally signed. During all of this period of resistance, however, no attempt was made to communicate with Carlson and it was not impracticable to have done so. Furthermore there is no proof that Hannah could not have been replaced. While McHugh testified that he did not know where he could have picked up another driver, nevertheless it does not appear that he made any effort to do so. Significantly, only a month before the execution of the questioned contract, another driver was procured to help Hannah service the territory. No immediate urgency or necessity was presented other than an opportunity to demand a part of plaintiff's capital and that situation was of Hannah's own making.

We therefore conclude that the defendant McHugh was not authorized to make the executory assignment of territory attempted to be accomplished by the agreement of September 2, 1944.

While this result disposes of the real issue in the case, nevertheless the defendant Hannah argues that plaintiff should be barred of relief because of matters now relied upon by way of ratification, acquiescence, laches and estoppel.

These are affirmative defenses which should have been but were not raised in the answer or pretrial order, and consequently were not properly before the trial court and may not be argued on this appeal. *Rule* 3:16 as amended December 19, 1949; *Jenkins v. Devine Foods, Inc.*, 3 *N. J.* 450 (1950); *Anderson v. Modica*, 4 *N. J.* 383, 393 (1950); *Mead v. Wiley M. E. Church*, 4 *N. J.* 200, 206 (1950). Additionally the proofs do not sustain any of them.

■■ As the basis for further argument the defendant Hannah apparently assumes that plaintiff's judgment for $4,000 is for commissions due on an "attempted" assignment or transfer of territory to Hannah by the plaintiff himself after his return from service in December, 1945, when Hannah replaced the extra driver in the "up-county" territory. Relying on this assumption Hannah insists this alleged assignment was without Galler's required consent and therefore plaintiff had no property right which he could transfer and for which he could demand any payment, and further that the award of the arbitrator on March 11, 1946, hereinabove mentioned, determining that the distributors, including the plaintiff, could not sell or assign their territories without Galler's consent, is *res adjudicata* so far as plaintiff's recovery of commissions on the assumed basis is concerned. In the first place these purported defenses are not encompassed by the pleadings and pretrial order and for that reason are not properly before us. In the second place the foregoing assumption is not supported by the record. The complaint is not for the recovery of commissions accruing from any assignment or transfer of territory, but for a discovery and accounting for profits received by Hannah as the result of his unauthorized appropriation of a part of plaintiff's territory. The asserted liability is not predicated upon the basis of an assignment of territory but upon the lack of it. The judgment below is rested wholly upon this theory and therefore these belated defenses are without merit.

■ It is also argued that after July 1, 1946, plaintiff had no property right in the "up-county" territory because of a new allocation of territories made by the contracts herein-

before mentioned between Galler and the union representing the individual distributors whereby, it is claimed, the Paterson route was assigned to the plaintiff and the remainder of his original territory was assigned to Hannah and another. Here again the defendant Hannah is confronted by the insurmountable difficulty that this matter is not made an issue by the pleadings or pretrial order. Furthermore, satisfactory proof is lacking to show that any reallocation of territories was intended to or did affect or foreclose plaintiff's rights under his contract with Galler made on April 9, 1940, or prevent plaintiff from asserting his claim to that part of the territory now operated by Hannah.

So far as Hannah's appeal from the judgment in favor of the defendant McHugh and against the plaintiff is concerned, it suffices to say that Hannah did not file a cross-claim against McHugh, nor did he indicate in his pleadings, at the pretrial conference, or at the trial, that McHugh, not himself, should be liable to Carlson. Therefore he cannot raise it for the first time on this appeal as a ground for reversal.

The judgment below is accordingly affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.