**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3951-17T2

J & M SCHRAGGER, LLC,

 Plaintiff-Respondent,

v.

PENNINGTON AFRICAN
CEMETERY ASSOCIATION, INC.,

 Defendant-Appellant,

and

SUSAN A. WITCHER and
ANGELA WITCHER,

 Defendants.

_____

   Argued May 20, 2019 – Decided July11, 2019

   Before Judges Messano and Gooden Brown.

   On appeal from the Superior Court of New Jersey, Chancery Division, Mercer County, Docket No. C-000053-16.

Dafney Dubuisson Stokes argued the cause for appellant (Wong Fleming, PC, attorneys; Dafney Dubuisson Stokes, on the briefs).

Bruce M. Schragger argued the cause for respondent (Schragger, Schragger & Lavine, PC, attorneys; Bruce M. Schragger, on the brief).

PER CURIAM

Plaintiff J & M Schragger, LLC, the contract purchaser of certain property (the property) in Pennington, intended to subdivide the parcel and construct a new house behind the existing house already on the lot. Defendant Pennington African Cemetery Association, Inc. (PACA), owned a "flag lot," see American Dream at Marlboro, LLC v. Planning Board of Marlboro, 209 N.J. 161, 164 (2012) (describing flag lot configuration), that bordered one side and the rear of the property. Access to PACA's historic cemetery, and to the proposed newly created lot, was over a narrow strip of land on the flag lot. Believing it had negotiated an access easement agreement with PACA, plaintiff consummated its purchase of the property and circulated the formal proposed easement agreement for execution. When PACA refused, plaintiff filed suit seeking, among other remedies, specific performance of the easement grant.

Both sides moved for summary judgment following discovery. In a comprehensive oral decision, Judge Mary C. Jacobson concluded there was

2

"implied authority for [PACA's real estate attorney, Gary] Backinoff to enter into the agreement."  She also concluded, "there [we]re aspects of apparent authority here as well[,]" because plaintiff "relied on the communications between . . . Backinoff and [its] attorney and moved forward" with the purchase. The judge's September 13, 2017 order granted plaintiff partial summary judgment enforcing the easement agreement and denied PACA's cross-motion. The order further provided that "[i]f an easement agreement is executed . . . by October 13, 2017, [p]laintiff has agreed to dismiss its claims for damages."[1]

PACA did not execute the agreement, and plaintiff moved for summary judgment as to damages and to enforce its rights under the September 2017 order, and defendant sought summary judgment on the issue of damages.  After the parties consented to dismiss certain counts of plaintiff's complaint, Judge Jacobson denied plaintiff's claim for compensatory damages and entered the March 23, 2018 order granting plaintiff final judgment in the form of specific

---

[1] Defendant's notice of appeal does not include this order.  Ordinarily, "it is only the judgments or orders . . . designated in the notice of appeal which are subject to the appeal process and review."  Pressler & Verniero, Current N.J. Court Rules, cmt. 6.1 on R. 2:5-1 (2019).  Nonetheless, because the March 23, 2018 order was premised on the earlier order, "we will address the propriety of the earlier order, particularly since [plaintiff] has not argued against our ruling on its validity."  W.H. Indus., Inc. v. Fundicao Balancins, Ltda, 397 N.J. Super. 455, 459 (App. Div. 2008).

performance. The order required PACA to execute the easement agreement by a certain date and provided that plaintiff could enforce the order by seeking "appointment of a court-appointed party to execute the easement agreement" if PACA continued to refuse. Although PACA continued in its refusal, Judge Jacobson subsequently denied plaintiff's motion in aid of litigant's rights and granted PACA's motion for a stay pending appeal.

Before us, PACA contends the judge erred in concluding Backinoff had implied authority or apparent authority to bind PACA. It also argues that because it lacked knowledge of the existence of any easement agreement, actions it took were not ratifications of the agreement. Having considered these arguments in light of the record and applicable legal principles, we affirm.

I.

We confine our review to the motion record before Judge Jacobson when she first granted specific performance, see Ji v. Palmer, 333 N.J. Super. 451, 463-64 (App. Div. 2000), beginning with the evidence supporting plaintiff's motion for partial summary judgment.

In an affidavit, plaintiff's predecessors in title asserted their family had owned the property for more than sixty years, during which they continually used the proposed easement area to access the rear of their property, and

maintained the area by cutting grass, removing snow and replacing stones over the years.

Plaintiff furnished a March 31, 2016 email from one of PACA's trustees, Angela Witcher (Angela),[2] to Backinoff, which was an apparent "[r]ecap of [a] counter[-]offer" containing certain conditions for the grant of the easement.[3] The next day, Backinoff sent an email to plaintiff's counsel stating, "I have general agreement on terms for easement agreement." He reiterated the specifics in Angela's email and requested a draft agreement to present to PACA's full membership. Plaintiff's counsel responded by email on April 4, stating plaintiff agreed to the terms, modifying only the terms of payment to PACA. Backinoff forwarded the email to Angela, asking if he was authorized to agree.

The record fails to reveal any response from Angela, but, the same day, Backinoff sent plaintiff's counsel a letter "[i]n response to [the] request for an easement." The April 4 letter said in relevant part, "five members of [PACA] met and . . . agreed to provide an easement subject to" certain conditions. Those

---

[2]  Angela and another trustee, Susan A. Witcher (Susan), were originally defendants in the lawsuit, but were dismissed from the litigation. To avoid confusion, we use their first names throughout the balance of the opinion. We intend no disrespect by this informality.

[3]  If there was an original offer from plaintiff, it is not in the record.

conditions reflected the terms in Angela's email and Backinoff's earlier email to plaintiff's counsel, specifically: the parties' agreement concerning a precise description of the easement and the grant of a reciprocal easement permitting PACA to use a "shed and turn around" on plaintiff's property; plaintiff agreed that no more than two homes would have access to the easement; plaintiff agreed to perpetually maintain the easement and plant and maintain a tree buffer; and plaintiff would pay $2500 to PACA, with an additional $2500 if plaintiff received subdivision approval. In accordance with instructions, plaintiff countersigned the letter and returned it to Backinoff with the required $1000 deposit.

Backinoff forwarded the letter to Angela the next day. On April 11, Angela sent Backinoff an email that indicated all members of PACA were in agreement, save one member whom she had not yet contacted. She also stated that she "should be able to give final confirmation shortly." On April 15, Backinoff sent plaintiff's check to Angela, with a copy of the countersigned April 4 letter. One week later, Backinoff advised plaintiff's counsel that PACA had approved stone pavers to be used for the drive and requested a proposed easement with metes and bounds description.

A-3951-17T2

Susan appeared at the May 11, 2016 meeting of the local planning board. The limited portion of the transcript in the record reveals she told the board PACA was ready to move forward with the grant of an easement, but Backinoff had advised PACA to "look into who will be signing the actual paperwork." Plaintiff secured subdivision approval conditioned on the execution of a formal easement agreement between plaintiff and PACA.

Following approval of the board's memorializing resolution in June, plaintiff's counsel forwarded a formal deed of easement with metes and bounds description in accordance with a survey, including within the reciprocal easement grant to PACA. On July 7, Angela sent a letter to plaintiff's principals indicating PACA would not execute the easement because of concerns regarding the driveway's classification as a "private road," which meant Pennington would not enforce motor vehicle laws if, for example, residents of the proposed second house blocked access to the cemetery.

In opposition to plaintiff's motion and in support of its cross-motion, PACA furnished its retainer agreement with Backinoff, in which he acknowledged there was "some question as to the authority of [PACA] to enter contracts and transfer property[,]" and suggested putting all of its members on notice of the proposed easement. Additionally, in a May 15 email to Backinoff,

7

Angela referenced "[t]he public meeting" — presumably before the planning board — as "a real eye-opener[,]" and said PACA "deeply regret[ted] . . . the[] negotiations ha[d] gotten [so] far." Claiming PACA felt "rushed[,]" Angela said it was "no longer comfortable with signing an easement."

Backinoff's response was telling. Agreeing to discuss the issue at an upcoming meeting with Angela, he wrote in an email reply: "Please realize . . . you made an agreement with your new neighbor, through me, which is arguably enforceable. You certainly are entitled to review and negotiate precise design of driveway and easement but you are arguably not entitled to simply negate your prior agreement." At his deposition, Backinoff explained his use of the word "arguably" by saying, "I wasn't sure . . . there was a . . . legally binding . . . agreement . . . ."

Additionally, PACA supplied excerpts from Angela's and Susan's depositions. Angela denied authorizing Backinoff to send the April 4 letter, and Susan asserted Backinoff "had no permission to sign any paperwork for [PACA,]" but neither testified that they ever told Backinoff not to proceed. Susan acknowledged that they decided against granting an easement after meeting "with the zoning officer," and "gather[ing] up more information about what an easement would mean."

A-3951-17T2

## II.

We review de novo the grant of summary judgment applying the same standard as the motion judge. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). Summary judgment is appropriate if the record demonstrates "there is no genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment . . . as a matter of law." Ibid. (quoting R. 4:46-2(c)). To determine whether there is a genuine issue of material fact, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We owe no deference to the trial court's legal analysis. The Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

An attorney may not act on behalf of a client without consent unless specifically authorized. Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475 (App.

A-3951-17T2

Div. 1997) (citing City of Jersey City v. Roosevelt Stadium Marina, Inc., 210 N.J. Super. 315, 327 (App. Div. 1986)). This is no different from the general rule that "an agent may only bind his principal for such acts that 'are within his actual or apparent authority.'" N.J. Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co., 203 N.J. 208, 220 (2010) (quoting Carlson v. Hannah, 6 N.J. 202, 212 (1951)). "Actual authority occurs 'when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.'" Ibid. (quoting Restatement (Third) of Agency: Actual Authority § 2.01 (Am. Law Inst. 2006)). As stated in Amatuzzo, absent express authorization,

> [n]egotiations of an attorney are not binding on the client unless . . . the client's voluntary act has placed the attorney in a situation wherein a person of ordinary prudence would be justified in presuming that the attorney had authority to enter into a settlement, not just negotiations, on behalf of the client.
>
> [305 N.J. Super. at 475 (citing U.S. Plywood Corp. v. Neidlinger, 41 N.J. 66, 74 (1963)).]

Further, we have held implied actual authority exists when "an agent is authorized to do what he [or she] may reasonably infer 'the principal desires him [or her] to do' in light 'of the principal's manifestations' and 'facts as he [or she]

10

knows or should know them' when he [or she] acts." Lampley v. Davis Mach. Corp., 219 N.J. Super. 540, 548-49 (App. Div. 1987) (quoting Lewis v. Travelers Ins. Co., 51 N.J. 244, 251 (1968)).

The scope of the agent's implied authority is limited to only what he may reasonably draw from the principal's words and conduct, and the facts then known to the agent. Kisselbach v. Cty. of Camden, 271 N.J. Super. 558, 565 (App. Div. 1994) (citing Lampley, 219 N.J. Super. at 548-49); see also Newark Branch, NAACP v. Twp. of W. Orange, 786 F. Supp. 408, 424 (D.N.J. 1992) ("The focus is on the agent's reasonable perception of the principal's manifestations toward him."). "And if the authorization is ambiguous, the agent has authority to act in accordance with what he reasonably believes to be the wish of the principal even though it is contrary to the principal's actual intent." Lewis, 51 N.J. at 251 (citing Restatement (Second) of Agency: Interpretation of Ambiguous Instructions § 44 (Am. Law Inst. 1958)). Importantly, "[t]he principal's unexpressed reservations and qualifications do not reduce the agent's actual authority." Restatement (Third) of Agency: Creation of Actual Authority § 3.01 cmt. b (Am. Law Inst. 2006).

"Apparent authority arises 'when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable

11

to the principal's manifestations.'" Stewart Title, 203 N.J. at 220 (quoting Restatement (Third) of Agency: Apparent Authority § 2.03 (Am. Law Inst. 2006)). "The doctrine of apparent authority 'focuses on the reasonable expectations of third parties with whom an agent deals.'" Ibid. (quoting Restatement (Third) of Agency: Agent Acts with Apparent Authority § 7.08 cmt. b (Am. Law Inst. 2006)). In either case, "direct control of principal over agent is not absolutely necessary; a court must examine the totality of the circumstances to determine whether an agency relationship existed even though the principal did not have direct control over the agent." Sears Mortg. Corp. v. Rose, 134 N.J. 326, 338 (1993) (citing 2 C.J.S. Agency § 36 (1972)).

PACA focuses on Backinoff's deposition testimony, arguing he did not conclusively believe he had legally bound PACA through the April 4 letter, never received express authorization from PACA to agree to the terms, and was unsure about the association's ability to convey the easement in the first place. It argues the judge placed insufficient weight on Backinoff's testimony and undue significance on the retainer agreement, which, Judge Jacobson noted, expressed PACA's retention was primarily limited to Backinoff's negotiation of the easement.

However, viewing the totality of the circumstances in the motion record, we agree with Judge Jacobson's essential assessment and conclude that the evidence was "so one-sided that [plaintiff] must prevail as a matter of law." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). Angela's March 31 email to Backinoff set forth PACA's "counter[-]offer" regarding the easement. Those terms found their way into Backinoff's email to plaintiff's counsel the following day, who in turn agreed to the terms in an email on April 4. In short, the course of conduct to that point led Backinoff to reasonably believe that he had secured the express terms PACA sought, and that he possessed actual authority to formalize the agreement.

Judge Jacobson gave appropriate significant weight to this course of conduct, culminating in the April 4 letter from Backinoff to plaintiff's counsel, which the judge concluded bound PACA to the agreement. The letter set forth all the terms PACA demanded that Backinoff negotiate on its behalf, and required that plaintiff's principals countersign the letter and forward the agreed upon deposit. Plaintiff immediately complied.

Backinoff sent the letter to Angela the following day, and, when she responded by email six days later, she did not question or renounce what had occurred. Instead, she told Backinoff that all members of PACA, save one, had

13

agreed, and she expected to reach that person and "give final confirmation shortly." Thereafter, PACA reaffirmed its intention to proceed with the grant of the easement, by approving plaintiff's selection of pavement for the easement area and indicating its intention to grant the easement before the planning board.

In short, no reasonable fact finder could conclude that Backinoff lacked the implied actual authority to act on PACA's behalf and agree to the terms of the easement grant. See R. 4:46-2(c). Judge Jacobson properly granted summary judgment on the specific performance count of the complaint, and subsequently final judgment in plaintiff's favor.

Based on our reasoning, we need not consider whether Backinoff possessed the apparent authority to bind PACA to the easement grant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3951-17T2