**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4068-23

MOSHE SUGAR,

     Plaintiff-Respondent,

v.

ZHI SHAN WANG,

     Defendant-Appellant,

and

BLOCK 19902, LOT 7, a/k/a
102 VAN HORN ST., JERSEY
CITY, NEW JERSEY, and
HUIJIN WANG,

     Defendants.

_____

Submitted June 5, 2025 – Decided July 10, 2025

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000089-21.

The Law Office of Savio D. Figaro, LLC, attorney for the appellant (Savio D. Figaro, on the briefs).

The Law Offices of John J. Novak, PC, attorney for respondent (John J. Novak, on the brief).

PER CURIAM

Defendant Zhi Shan Wang appeals from a June 14, 2024 Chancery Division order, which granted plaintiff Moshe Sugar's request for specific performance of a real estate sales contract, executed by Zhi's daughter, Huijin Wang, conveying Zhi's property in Jersey City.[1] Zhi also appeals the court's August 2, 2024 order denying his motion for reconsideration. The court concluded Huijin acted with apparent authority in effectuating the sale of the property.

We reverse the court's June 14, 2024 order to the extent the court concluded Huijin acted with apparent authority, and remand for further factual findings and legal conclusions consistent with Rule 1:7-4 as to the applicability of the doctrine of actual authority. In light of our decision to remand the matter

---

[1] Because Zhi and Huijin share the same surname, we use their first names for ease of reference, intending no disrespect. Further, the record contains various spellings of "Huijin." For consistency, we employ the spelling used in Zhi's brief and the case caption.

for additional factual findings and legal conclusions, we need not address the propriety of the court's order denying reconsideration.

Zhi, who primarily lives in China, purchased the property in 2017 as an investment. He returned to China shortly after the purchase and remained there until the underlying trial. Zhi's wife and Huijin live in the United States.

Plaintiff, a real estate developer who does business in Jersey City, was contacted by his broker about the property. Between January 15 and 18, 2021, plaintiff and Huijin electronically executed a "Statewide New Jersey Realtors Standard Form of Real Estate Sales Contract" conveying the property to "LLC TBD," a designation typically used by plaintiff when purchasing real estate held by a to-be-created entity, for the total sale price of $403,000. After the contract was signed, plaintiff sent the required deposit and the transaction proceeded through attorney review. Plaintiff testified both he and Huijin were represented by counsel throughout the transaction.

Prior to closing, plaintiff's broker informed him Huijin demanded more money for the property. Plaintiff informed his broker he did not want to pay more for the property and, if he backed out of the deal, he would require Huijin to repay the costs he already expended, roughly $45,000 in architectural fees, utility shutoffs, engineering costs, and environmental permits. Plaintiff testified

Huijin refused to pay for his out-of-pocket expenses and specifically stated, "no, I'm not paying anything. My father wants more money. If you want to agree to give me more money, I will get my father to sign off."

Plaintiff requested an in-person meeting at his broker's office in Hoboken. According to plaintiff, at the meeting, Huijin again stated she wanted more money for the property, which plaintiff rejected and noted there was already a contract in place. Plaintiff testified Huijin responded "take me to court. My father lives in China. I don't care. . . . [T]he [c]ourt will for sure tell me that I can win the property." Plaintiff further testified he believed Huijin was the property owner prior to the meeting at the broker's office.

The transaction failed to close, and plaintiff thereafter filed a three-count complaint against Zhi seeking specific performance, damages, attorney's fees, litigation costs, expenses, and also requested a lis pendens against the property. After the court dismissed the matter without prejudice for lack of prosecution under Rule 1:13-7, the court denied both Zhi's motion to discharge the lis pendens and plaintiff's cross-motion to restore the complaint to the active trial list. Once defense counsel was authorized to accept service on behalf of Zhi, the court granted plaintiff's motion to restore the complaint and denied Zhi's additional motion to discharge the lis pendens.

4

The court conducted a three-day bench trial where plaintiff and Zhi were the only witnesses. Zhi moved to dismiss, which the court denied and explained it was "very much persuaded that there [was], at the very least, apparent authority, if not actual authority here." At the conclusion of the proofs, the court issued a June 14, 2024 order and accompanying written decision, which granted plaintiff's request for specific performance.

With respect to Zhi's testimony, the court overruled his counsel's objection that Zhi should not be compelled to testify in plaintiff's case-in-chief under N.J.S.A. 2A:81-6 because the matter was "somewhat similar to a forfeiture case." The court overruled counsel's objection and explained there is "no rule or case[]law [interpreting] the court rules or the evidence rules" that would prohibit plaintiff from calling Zhi as a witness.

The court next stated it had "never encountered a more hostile witness than" Zhi. It explained, when defense counsel objected to the use of leading questions, that plaintiff's counsel "ha[d] every right . . . to . . . ask leading questions. And he's forced to do so because of the apparent unwillingness of . . . [Zhi] to answer the questions. [Zhi] not only doesn't answer them, he obfuscates and then argues with the attorney."

A-4068-23

The court also made separate credibility findings adverse to Zhi. Specifically, it found Zhi "contradicted himself regarding the delegation of duties for managing the . . . property" because "he denied ever discussing the desire to sell this property with [Huijin] or his thoughts on a fair market value," but later testified "he did discuss th[ose] issues with his wife and daughter[,] but not before 2021." He also stated, "he did discuss [the property's affairs] with [Huijin] but not until 2023," which the court determined was inconsistent with his earlier statements.

Further, the court found Zhi's description of his relationship with Huijin "highly suspect" and that "[i]t defie[d] belief that a father could speak to his daughter [four to five] times per week and never discuss the sole piece of real estate he owns in the United States." Additionally, because Zhi stated "he still want[ed] to sell the property but th[ought] it should fetch a higher price," which was consistent with Huijin's position at the in-person meeting, the court concluded "it is clear . . . [Zhi] thought the property was worth more than the contract price, expressed as much to his daughter who, acting in his stead, attempted to re-open negotiations," and that the "only logical conclusion is that [Huijin] did so with the authority and blessing of her father, the titled owner." Thus, the court held Zhi's "testimony shows a pattern of delegating authority

6

over this property to his wife and daughter then claiming ignorance to their actions so as to disavow the effects thereof if need be."

Next, with respect to Huijin, the court concluded her "conspicuous absence from the trial . . . support[ed the] . . . conclusion that she . . . act[ed] as her father's agent and on his behalf in an effort to strike a better deal." And, despite knowledge of her address and ability to subpoena her, the court explained her absence "raise[d] a reasonable inference on the court's part that her testimony would have been deleterious to his defense."

In light of the foregoing findings, the court determined Zhi "is bound by the acts of Huij[i]n . . . as his agent in the contract for sale," the contract is valid and enforceable, and there is no "credible evidence in the record to support a valid reason for Zhi's non-performance." With respect to agency, the court found Huijin acted with apparent authority on her father's behalf because of his absence which left his wife and/or daughter to handle the property's affairs. Finally, the court concluded "[i]t was not unreasonable for [plaintiff] to rely on the authority of Huij[i]n . . . to act on her father's behalf based on her conduct during the formation of the contract, relationship with the listing/selling broker, attorney review[,] and post-attorney review negotiations."

A-4068-23

The court also issued an August 2, 2024 order which denied Zhi's motion for reconsideration. In the court's written statement of reasons, it reiterated its adverse credibility findings with respect to Zhi and again found he delegated responsibilities associated with the property to both his wife and daughter. The court stated Zhi's assertion that he never spoke with Huijin about the property despite frequent communication "defie[d] all credulity" and was "not worthy of belief." Finally, the court explained that Huijin acted with apparent authority and continued to handle all aspects of the sale and attempted renegotiations.

Before us, Zhi maintains the court erred in finding Huijin had apparent authority to sell the property because the record does not contain sufficient evidence to make such a finding. Zhi argues he did not "convey nor intended to convey the impression of authority" to plaintiff and only testified he left the property's management to his wife, not his daughter. Relying on our decision in Lobiondo v. O'Callaghan, 357 N.J. Super. 488 (App. Div. 2003), Zhi contends his conduct did not lead plaintiff to believe that Huijin had authority to sell the property because Zhi had no prior contact with plaintiff, plaintiff believed Huijin was the owner of the property until the in-person meeting, and that plaintiff relied on the broker and his attorney to his detriment.

8

Zhi also contests the court's award of specific performance. On this point, he reprises his argument he did not sign the contract, and it is therefore unenforceable. He further maintains plaintiff breached the contract by failing to timely provide the down payment as required by the contract, which violated the time of the essence clause. With respect to any waiver of the time of the essence clause, Zhi contends plaintiff failed to present any evidence to show how he prevented the timely closing. Moreover, Zhi asserts "[i]t is unreasonable, harsh[,] and unjust to compel [him] to forfeit the property" because plaintiff is experienced in real estate transactions, was represented by an attorney, and was thus in a "better position to protect his interest."

Zhi argues the court erred when it allowed plaintiff, over his counsel's objection, to call him as a witness because specific performance is a type of forfeiture, which requires the application of N.J.S.A. 2A:81-6. He claims that error caused an unjust result because the court relied heavily on his testimony in deciding the case, particularly his credibility. If the court properly applied N.J.S.A. 2A:81-6, his testimony would not have occurred, and the court would not have found plaintiff "established a prima facie case" on plaintiff's testimony alone.

A-4068-23

In reviewing a judgment issued after a bench trial, "we give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)). We do not disturb a trial court's factual findings or legal conclusions unless they are so manifestly unsupported by the competent, relevant evidence that affirmance would constitute an injustice. Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017). Particular deference is owed to the trial court's assessment of witness credibility because the court was able to observe the witnesses as they testified. Balducci v. Cige, 240 N.J. 574, 594-95 (2020).

We review a decision on a motion for reconsideration of a final judgment or order pursuant to Rule 4:49-2 for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (citing Kornbleuth v. Westover, 241 N.J. 289, 301 (2020)). Such motions are "within the sound discretion of the [c]ourt, to be exercised in the interest of justice." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

An agency relationship arises when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent. Sears Mortg. Corp. v. Rose, 134 N.J. 326, 337 (1993). The general rule is that "an agent may only bind [the] principal for such acts that 'are within [their] actual or apparent authority.'" N.J. Laws.' Fund for Client Prot. v. Stewart Title Guar. Co., 203 N.J. 208, 220 (2010) (quoting Carlson v. Hannah, 6 N.J. 202, 212 (1951)).

"Apparent authority imposes liability on the principal not as a result of an actual contractual relationship, but because the principal's actions have misled a third-party into believing that a relationship of authority in fact exists." Mercer v. Weyerhaeuser Co., 324 N.J. Super. 290, 317 (App. Div. 1999) (citing Blaisdell Lumber Co. v. Horton, 242 N.J. Super. 98, 102-03 (App. Div. 1990)). The doctrine of apparent authority "focuses on the reasonable expectations of third parties with whom an agent deals." Restatement (Third) of Agency § 7.08 cmt. b (Am. L. Inst. 2006).

"An agent's success in misleading the third party as to the existence of actual authority does not in itself make the principal accountable." Id. at § 2.03 cmt. c. Thus, "apparent authority arises 'when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable

11

to the principal's manifestations.'" Bridgewater-Raritan Educ. Ass'n v. Bd. of Educ. of Bridgewater-Raritan Sch. Dist., Somerset Cnty., 221 N.J. 349, 363 (2015) (quoting Restatement (Third) of Agency: Apparent Authority § 2.03).

In contrast, "[a]ctual authority occurs 'when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.'" N.J. Laws.' Fund for Client Prot., 203 N.J. at 220 (quoting Restatement (Third) of Agency: Actual Authority § 2.01). "Actual authority (express or implied) may 'be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires [them] so to act on the principal's account.'" Jennings v. Reed, 381 N.J. Super. 217, 231 (App. Div. 2005) (quoting Restatement (Second) of Agency: Creation of Authority § 26 (Am. L. Inst. 1958)).

Based on our review of the record and the aforementioned legal principles, we conclude the court's finding that Huijin acted with apparent authority when selling the property was unsupported by the record. As noted, apparent authority requires that "the principal's actions . . . misled a third-party into believing . . . a relationship of authority in fact exists," Mercer, 324 N.J. Super. at 317.

Therefore, plaintiff's belief Huijin had authority to sell the property must have been based on Zhi's actions.

The record reflects plaintiff did not know Zhi existed or owned the property until after the contract was signed and, instead showed plaintiff believed Huijin owned the property. Additionally, the record lacks competent proof Zhi made any representations or took any actions to which plaintiff was aware regarding Huijin's purported authority to sell the property. Thus, because an apparent authority finding here would require, at the very least, that plaintiff was aware of Zhi, and some showing that Zhi led plaintiff to believe Huijin was authorized to sell the property, an apparent authority finding was improper.

Our analysis, however, is not complete. As noted, an agent's actions can bind the principal where either apparent or actual authority exists. N.J. Laws.' Fund for Client Prot., 203 N.J. at 220 (quoting Carlson, 6 N.J. at 212). Here, it appears certain of the court's factual findings support a finding of actual authority, as it acknowledged when denying Zhi's motion to dismiss. Unlike apparent authority, actual authority in this case would be based on Zhi's representations to Huijin, and her reasonable belief, based on those representations, that she had the authority to bind her father to the contract of

sale, and that Zhi wanted her to do so.  See ibid.; Jennings, 381 N.J. Super. at 231.

By way of example only, the court found Zhi tasked both his wife and Huijin with managing the property's affairs while he was in China and that it "defie[d] belief" Zhi and Huijin never discussed the property during their numerous weekly calls.  Also, according to plaintiff's credible testimony, Huijin twice referenced her father's involvement in the sale of the property; first when she demanded more money for the property, and again when she threatened to resort to judicial intervention when plaintiff refused to pay more.  And, Zhi himself indicated he wanted to sell the property.

As noted, however, the court's legal findings were primarily based on a finding of apparent authority.  The record would benefit from more specific factual and legal findings and remand for the court to make findings consistent with Rule 1:7-4 as to whether Huijin had actual authority to enter the real estate contract.  We decline to exercise original jurisdiction on this point and conclude the trial court should address the issue in the first instance and provide the parties with an opportunity to brief and be heard on the matter, if necessary.  See Price v. Himeji, LLC, 214 N.J. 263, 294 (2013).

14

Next, we need not address at length Zhi's arguments with respect to the court's award of specific performance as the propriety of that remedy is contingent upon the court's actual authority findings on remand. Marioni v. 94 Broadway, Inc., 374 N.J. Super. 588, 598 (App. Div. 2005) ("In general, to establish a right to the remedy of specific performance, a plaintiff must demonstrate that the contract in question is valid and enforceable at law."); N.J.S.A. 25:1-13 ("An agreement to transfer an interest in real estate . . . shall not be enforceable unless . . . the identity of the transferor and transferee are established in a writing signed by or on behalf of the party against whom enforcement is sought."). We note only that a specific performance remedy would be appropriate in the event Huijin is deemed to have acted with actual authority when signing the contract.

Further, we find Zhi's breach-based arguments meritless as plaintiff testified "the down payment was delivered to the seller's attorney" right after attorney review, and Zhi fails to cite any record support to the contrary. See Nolan v. Control Data Corp., 243 N.J. Super. 420, 438 (App. Div. 1990) ("[T]he burden of establishing a breach of contract rests with the party who asserts the breach."). We further see no reason why enforcing the contract through specific

performance, assuming appropriate authority exists, would be unreasonable, harsh, or unjust.

Finally, Zhi's argument that he was improperly called as a witness in plaintiff's case in chief under N.J.S.A. 2A:81-6 is similarly unpersuasive. That statute states:

> [i]n all civil actions in any court of record a party shall be sworn and shall give evidence therein when called by the adverse party, but no party thereto shall be compelled to be sworn or give evidence in any action brought to recover a penalty or to enforce a forfeiture.
>
> [N.J.S.A. 2A:81-6.]

We are unpersuaded by Zhi's reliance on the Law Division's decision in Chase Manhattan Mortgage Corp. v. Hunt, 364 N.J. Super. 587 (Law Div. 2003) as we are convinced neither N.J.S.A. 2A:81-6 nor that case apply to the facts and circumstances before us. In Chase, the court interpreted N.J.S.A. 2A:81-6 and relied on a dictionary definition of forfeiture in concluding an eviction action constituted a forfeiture under the statute. Id. at 589, 593. Here, the matter does not involve the loss of property as described in Chase or in N.J.S.A. 2A:81-6, as it is not an "action brought to recover a penalty or enforce a forfeiture," but pertains to enforcement of a contract to sell property and the court's award of specific performance. Plaintiff properly called Zhi as a witness in his case-in-

16

chief and the court correctly permitted the testimony in accordance with the Rules of Evidence.

In sum, we reverse the court's June 14, 2024 order which awarded specific performance based on a finding that Huijin acted with apparent authority. Nothing in our opinion should be construed as suggesting our view on the outcome of the remanded proceedings.

Reversed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

17

A-4068-23