219 N.J. Super. 540 (1987)
530 A.2d 1254
THEODIS LAMPLEY, PLAINTIFF-RESPONDENT,
v.
DAVIS MACHINE CORPORATION; TERMINAL PAPER BAG CO., INC.; STILLWATER TOOL & MANUFACTURING CO.; TRINITY BAG & PAPER CO., DEFENDANTS, AND POTDEVIN MACHINE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 18, 1987.
Decided May 21, 1987.
*542 Before Judges KING, DEIGHAN and HAVEY.
John F. Whitteaker argued the cause for appellant (Orbe, Nugent & Collins, attorneys; John F. Whitteaker, on the briefs).
Patricia Breuninger argued the cause for respondent (Breuninger, Hansen & Casale, attorneys; Patricia Breuninger, on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
Defendant Potdevin Machine Company (PMC) appeals from a judgment in favor of plaintiff Theodis Lampley requiring defendant to pay plaintiff the remainder of a settlement of two claims against PMC. Plaintiff, an employee of Trinity Bag & Paper Company, instituted two separate actions against PMC in negligence, strict liability and for breach of warranty for personal injuries sustained as a result of an alleged defect in a machine manufactured and designed by PMC.
Ambassador Insurance Company (Ambassador) insured PMC during the period of time that the plaintiff was injured and undertook the defense of the claims and assigned defense counsel to represent PMC. Subsequently, Ambassador became insolvent and the New Jersey Surplus Lines Insurance Guaranty Fund Act (Fund), N.J.S.A. 17:22-6.70 et seq., took over the *543 defense from Ambassador and retained the same attorney to continue as trial counsel for PMC. The Fund took over 18 claims for products liability actions instituted against PMC while PMC was insured by Ambassador.
During the pendency of the present actions, settlement negotiations took place between plaintiff's counsel and trial counsel for PMC, who was originally retained by Ambassador. Several settlement proposals were forwarded to PMC by the defense attorney with suggestions involving payments or a guarantee of payments by PMC. These proposals were at all times rejected by PMC who contends it was prepared to try the matter. By letter of April 10, 1985 defense counsel reported as follows to the Fund:
At some time prior to the last scheduled trial, extensive settlement negotiations were held, and as a result thereof, the plaintiff had agreed to accept $50,000.00 in full and complete settlement of both cases providing payment would be made within a reasonable time. Since Ambassador Insurance Company was not making any payments, the plaintiff looked to the insured, Potdevin Machine Co., Inc. to make the payment and to then make a claim against Ambassador Insurance Company. Since Potdevin Co., Inc., was not in a position to make these payments, the case was not settled.
At the time that the plaintiff had agreed to accept $50,000.00, this demand had been approved by the claims department of Ambassador Insurance Company. Plaintiff's attorney has now indicated to the undersigned that she would be willing to settle both cases for $50,000.00 if the settlement would be approved by your office, and she could anticipate payment in the near future.
After numerous postponements, trial of the present matter was scheduled for September 9, 1985. On September 9, 1985, at approximately 3:30 p.m. plaintiff's attorney, with the permission of defendant's trial counsel, contacted John F. Whitteaker, PMC's personal attorney, and advised that the case was scheduled for trial the next day and further advised that:
(a) plaintiff's counsel and defense counsel had agreed on $50,000 as a settlement value of the case but plaintiff was concerned about a delay in payment of such sum;
(b) with plaintiff's specials of $10,000 and economic loss of $7,000, PMC would face several risks if the case went to verdict such as 36% pre-judgment interest (which is not reimbursable under the Guaranty Fund Act), a verdict higher than $50,000 and immediate execution of any judgment;
(c) the Guaranty Fund would pay only forty (40) percent immediately upon settlement, and

*544 (d) the case would settle if PMC would guarantee payment of the balance of the settlement in one year if not paid in full by the Guaranty Fund.
Plaintiff's counsel sought PMC's guarantee concerning the above proposed settlement. Whitteaker advised that he would call plaintiff's counsel back on the next day.
On September 10, 1985 Whitteaker spoke to plaintiff's attorney, who was leaving for court, and advised that he would discuss the proposal with PMC and report to her by noon but that he would recommend that the case proceed to trial. On the same date, at about 3:15 p.m., after discussing the matter with PMC, Whitteaker called plaintiff's attorney, who was not available, and left a message that PMC was unwilling to guarantee any payment by the Fund. At that point the plaintiff's attorney's secretary advised Whitteaker that the case had been settled.
At oral argument, plaintiff's attorney advised the court that the conversation with defendant's personal counsel was substantially correct and that Whitteaker said if plaintiff wanted a guarantee of the settlement the matter must go to trial. The plaintiff's attorney also indicated at oral argument that defense counsel indicated that the $50,000 settlement was agreed to by not only the fund but PMC.

I.
By adoption of the New Jersey Surplus Lines Insurance Fund Act (Act), N.J.S.A. 17:22-6.70 et seq., the Legislature created a fund to avoid financial loss to claimants and policyholders because of the insolvency of insurers such as Ambassador. N.J.S.A. 17:22-6.71. The Fund has limited resources, however, and N.J.S.A. 17:22-6.74a(1) authorizes the Commissioner of Insurance to adjust the Fund's obligations for covered claims based on the monies available in the fund. Estate of Carroll v. Samuel Geltman and Co., 214 N.J. Super. 306, 308 (App.Div. 1986).
*545 Pursuant to that authority, in Carroll, the Commissioner ordered the Fund to pay only "40% of the principal amount" of each covered claim against Ambassador. The order further provided that "[p]ayments in excess of 40% of covered claims shall not be made until further order of the Commissioner." The Commissioner's general commitment to pay all claims against Ambassador was made "subject to the issuance of an order by the Commissioner to the contrary." Id. at 308.
On September 11, 1985, plaintiff executed a release to PMC which provided, among other things, that:
1. Release. I release and give up any and all claims and rights which I may have against you. This releases all claims, including those of which I am not aware and those not mentioned in this Release. This Release applies to claims resulting from anything which has happened up to now. I specifically release the following claims:
All claims of whatever nature arising out of an industrial accident at the Trinity Bag & Paper Company, Elizabeth, New Jersey, on March 13, 1981, as set forth in the Amended Complaint of Theodis Lampley, under Docket No. L-69028-81, against the Defendant POTDEVIN MACHINE COMPANY, INC.
2. Payment. I have been paid a total of $10,000 in full payment for making the Release. I agree that I will not seek anything further including any other payment from you.
3. Who is Bound. I am bound by this Release. Anyone who succeeds to my rights and responsibilities, such as my heirs or the executor of my estate, is also bound. This Release is made for your benefit and all who succeed to your rights and responsibilities, such as your heirs or the executor of your estate.
On the same date plaintiff executed a similar release for the sum of $40,000 concerning the claim which occurred on October 28, 1980. Both releases were forwarded to defense counsel.
On January 22, 1986 plaintiff executed two releases and assignment of claim form to the Fund, one in the amount of $4,000 representing 40% of the $10,000 settlement and the other in the amount of $16,000 representing 40% of the settlement of the other claim for the total sum of $20,000. Both releases contained the following provision:
(3) What is not covered by this release: I understand that my claim is now being paid by you [the Fund] under a state law that has certain limits. Certain of those limits are set by the New Jersey Commissioner of Insurance, and the Commissioner may change those limits from time to time.

*546 Because of this, I am now being paid only the amount shown in Paragraph One [$16,000 and $4,000]. If the total amount of my claim is more than that, I may be able to receive additional payments towards my total claim from you, but only if the New Jersey Commissioner of Insurance allows additional payments on claims such as mine. I AM AWARE THAT THE PRECISE TIMING AND AMOUNT OF SUCH ADDITIONAL PAYMENTS, IF ANY, CANNOT PRESENTLY BE DETERMINED. In the meantime, I may try to obtain payment from the Receiver of Ambassador Insurance Company ... or from any other person who may have a lawful obligation to make payments to me by reason of my claim.
After plaintiff received 40% of his claim from the Fund he moved for an order for judgment against PMC for the remaining balance of $30,000. PMC cross-moved for an order to enforce the terms of settlement and to preclude plaintiff from proceeding against it. The trial court filed an opinion and granted plaintiff's motions and entered judgment against PMC for the sum of $30,000. Essentially, the trial court found that the Fund was acting as defendant's agent when it entered into the settlement with plaintiff.
On this appeal PMC contends that: (1) plaintiff waived his right to pursue the claim against PMC by settling the actions on the terms offered by the Fund; (2) the trial court misinterpreted the language of the release to the Fund which does not authorize a partially paid claimant to recover the balance from PMC; (3) the trial court should have enforced the terms of the settlement, and (4) the orders appealed from are inconsistent with the policy underlying the Guarantee Fund Act.
Plaintiff contends that: (1) the Fund is the agent of PMC who is bound by the settlement; (2) the settlement was made by the attorney for Ambassador and the Fund who represented defendant's interest; (3) the releases did not waive plaintiff's rights against defendant and have not been fully performed, and (4) alternatively, the releases executed by plaintiff to defendant must be rescinded on the basis of a mutual mistake and failure of consideration and the cases remanded for trial on the merits.

*547 II.
In his letter opinion of July 30, 1986, the trial judge held that the Fund was acting on behalf of PMC when it entered into the settlement:
It is this court's opinion that the New Jersey Surplus Lines Guaranty Fund was acting on behalf of defendant, Potdevin Machine Company, when it entered into the settlement. Under the principles of agency law the principal, Potdevin Machine Company, is bound by the settlement and the agreements signed. See, generally, Ross v. Realty Abstract Co., 50 N.J. Super. 147 (App.Div. 1958). Based on this theory, defendant is specifically bound by the statement in release which gives plaintiff the right to attempt to obtain payment from the party who is lawfully responsible to make payment by reason of the claim. In this case that can only refer to defendant, since it is the only party that was a tortfeasor whose actions lead to the injuries complained of in the suits involved.
We disagree.
Under general principles of insurance law it is axiomatic that the insurer maintains the right to control defense of the case, Rova Farms v. Investors Ins. Co., 65 N.J. 474, 492 (1974); Lieberman v. Employer's Insurance of Wausau, 171 N.J. Super. 39, 48 (App.Div. 1979), mod'd on other grounds 84 N.J. 325 (1980), but only to the extent of its obligation under the insurance policy. See Firemen's Fund Ins. Co. v. Security Ins. Co. of Hartford, 72 N.J. 63, 71, 75 (1976) (right to control litigation is limited to the amount of coverage but not where proposed settlement exceeds limits of policy).
The Fund is required to "investigate claims brought against the Fund" and to "adjust, compromise, settle and pay covered claims to the extent of the fund's obligation." N.J.S.A. 17:22-6.74a(4). However, the Fund's control over settlement of claims is circumscribed to the extent of its liability. Although the Fund is "deemed [to be] the insurer," it is limited "to the extent of its [the Fund's] obligation," N.J.S.A. 17:22-6.74a(2); (emphasis supplied). Since the Fund was authorized to pay only 40% of the settlement of the principal amount of each claim, the balance of any settlement (or judgment) falls upon the defendant insured. Carroll at 309.
*548 Since PMC as a former insured of Ambassador will be required to pay the balance PMC any settlement, it is inconceivable that the Fund can commit it to pay the balance of any settlement without its consent. See Lieberman v. Employer's Insurance of Wausau, supra, 71 N.J. Super. at 48, 84 N.J. at 336 (where required by the terms of the policy, the insurer is not authorized to effect settlement without the insured's consent).
Here, the "policy limits" of the Fund are 40% of the settlement. If the amount claimed exceeds the policy limits, (or, as here, the amount to be paid by the Fund) the insurer may settle its own liability without the insured's consent, but if the proposed settlement exceeds the policy limits, (or the amount to be paid by the Fund), so that the insured would have to pay the excess, the insured's consent would be required before the insurance company, here the Fund, may settle. 7C Appleman, Insurance Law and Practice, § 4711 at 370 (Berdal Ed. 1979). This is based upon the fundamental proposition that one cannot be bound on an obligation he does not know he is entering into. New Jersey Mtge. & Invest. Co. v. Dorsey, 60 N.J. Super. 299, 303-304 (App.Div.), aff'd 33 N.J. 448 (1960). In this instance, the Fund was authorized to act only to the extent of its obligation, N.J.S.A. 17:22-6.74a(2), (4) and therefore was not authorized to commit PMC, as an insured of Ambassador, to settle for an amount over its commitment.
Nor may the Fund be deemed to have apparent or implied authority on behalf of PMC. "Apparent authority results from a manifestation by a person that another is his agent." Lewis v. Travelers Insurance Co., 51 N.J. 244, 250-251 (1968), citing Restatement, 2d, Agency (1958) § 8, comment a. Apparent authority arises when a principal acts in such a manner as to convey the impression to a third party that the agent has certain power which he may or may not possess. Lind v. Schenley Industries, Inc., 278 F.2d 79, 85 (3d Cir.), cert. den. 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960). Under implied authority, an agent is authorized to do what he may reasonably *549 infer the principal desires him to do in light of the principal's manifestations and facts as he knows or should know them when he acts. Lewis, 51 N.J. at 251, citing Restatement, supra, § 33.
Here, plaintiff's attorney was aware of the limitation of the Fund to settle without the consent of PMC. On previous occasions during the course of settlement negotiations PMC was contacted and refused to consent to settlement on the proposed terms. Plaintiff's counsel, being aware of this limitation, contacted Whitteaker, attorney for PMC, to ascertain if PMC would guarantee the difference in settlement. Whitteaker advised plaintiff's counsel that he would not recommend settlement but would be back in touch with her. Unfortunately, settlement was consummated before plaintiff's attorney was formally advised that PMC would not consent to guarantee the difference between the amount the Fund would contribute and the total amount of the settlement. The record is totally devoid of any communication from the defense attorney to PMC. The defense attorney was fully aware that PMC had previously refused to settle and he could not reasonably infer that PMC authorized him to do so. Moreover, he never directly contacted PMC before settlement.

III.
Plaintiff has urged this court to affirm the trial court's holding. Alternatively, however, plaintiff proposes that if the Fund did not act as the agent for PMC, then the releases executed by plaintiff to PMC should be rescinded on the basis of a mutual mistake and failure of consideration and the matter be remanded for trial for the merits, citing 13 Williston on Contracts, (3d Ed. 1970) § 1535 at 6-7 (where the mistake is of so fundamental a character that the minds of the parties have never, in fact, met, equity will interfere, in its discretion, in order to prevent intolerable injustice).
Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made *550 has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party. Restatement, Contracts, 2d (1981) § 152, comment c. at 387-388. A compromise which is the result of a mutual mistake is not binding and consent to a settlement agreement is not considered freely given when it is obtained as the result of a mistake. 6 Appleman, supra, § 3979 at 674.
Releases of claims have afforded particularly fertile ground for invocation of this rule. Restatement, supra, comment f. at 390. A claimant's attempt to avoid a release based on mistake of both parties will frequently turn on a determination, in light of circumstances, of the basic assumptions of the parties at the time of the release. Id.
Here, plaintiff mistakenly believed that he would receive $50,000, the full amount of the settlement, whereas PMC at all times maintained it would not pay the difference between the 40% contribution by the Fund and the total amount of the settlement. There can be no question but that the mistake had a material effect on the agreed exchange of performances.
The matter is reversed and remanded for trial on the underlying claims of plaintiff.