

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-26-2007

# Verma v. Polaris Software Lab

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5404

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Verma v. Polaris Software Lab" (2007). *2007 Decisions.* Paper 1207.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1207

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-5404

_____

ARUN VERMA;
DATA, INC.,

Appellants

v.

POLARIS SOFTWARE LAB LIMITED


_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 00-cv-05500)
District Judge: Honorable Joel A. Pisano

_____

Argued on December 5, 2006

Before: RENDELL and AMBRO, <u>Circuit Judges</u>,
and BAYLSON*, <u>District Judge</u>.

(Filed: April 26, 2007)



_____


 *  Honorable Michael M. Baylson, Judge of the United States District Court for the
    Eastern District of Pennsylvania, sitting by designation.

William D. Wallach  **[ARGUED]**
McCarter & English
100 Mulberry Street
Four Gateway Center
Newark, NY   07102-0652
*Counsel for Appellants*
*Arun Verma; Data, Inc.*

Edward T. Kole    **[ARGUED]**
Wilentz, Goldman & Spitzes
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ    07095
*Counsel for Appellee*
*Polaris Software Lab Limited*

_____

OPINION OF THE COURT
_____

RENDELL, <u>Authoring Judge</u>,

Appellants Arun Verma and Data, Inc., appeal from the District Court's dismissal of their complaint, challenging that order of dismissal as well as the District Court's order precluding them from offering evidence at trial as to damages.  We will vacate and remand.

The parties are familiar with the facts, and we will therefore only narrate those that are necessary to our ruling.  In May 2000, Polaris Software Lab Ltd. ("Polaris") entered into a Memorandum of Understanding ("MOU") with Verma and Data whereby Verma agreed to sell his share holdings in Data to Polaris under the terms set forth therein.  The MOU anticipated the execution of a comprehensive agreement.  However, the terms of the MOU were only to be varied by mutual consent of all of the parties.

2

Under the MOU, Polaris was to purchase the stock of Data from Verma for $15 million together with $5 million of Polaris stock. Verma was to continue at Data as president and a member of its board of directors.

The MOU contained a provision whereby Data was to furnish financial information enabling Polaris to conduct due diligence. Polaris agreed to complete the due diligence in a maximum of twelve weeks, at which point the comprehensive agreement was to be executed. The specific provisions setting forth these requirements then stated, "Otherwise the SHAREHOLDER will be entitled to the entire Escrow amount as liquidated damages." Appx. 369A, ¶ 9a. Polaris and Verma each placed $100,000 in an escrow account with Chase Manhattan Bank.[1]

---

[1]The escrow provision stated as follows:

> f) POLARIS and the SHAREHOLDER, each will place $ 100,000 (USD one hundred thousand) in an Escrow Account with Chase Manhattan Bank located in the State of New Jersey, USA, or any other mutually acceptable third party. POLARIS' amount will be a non-refundable deposit to be adjusted towards the cash payment to be made at the time of the comprehensive agreement, while SHAREHOLDER's contribution it to assure Polaris that the information furnished by SHAREHOLDER are correct and free from any falsification or willful suppression of any material information. SHAREHOLDER will forfeit the total amount in Escrow to POLARIS in such an event in accordance with the terms of Section 9 of this MoU. All escrow monies will be turned over to SHAREHOLDER at the time the comprehensive agreement is signed.

Appx. 367A, ¶ 3(f).

In September of 2000, Verma was told that the deal was being called off. In November 2000, Verma and Data brought suit against Polaris for "the damages caused by its breach of contract, fraudulent inducement, and breach of implied covenant of good faith and fair dealing." The complaint recounted the events leading up to the signing of the MOU, as well as all of the efforts made by Data and Verma during the due diligence period, including the engagement of a CPA firm to audit Data's financial statements as requested by Polaris. The Amended Complaint sought damages for breach of contract, fraudulent inducement by misrepresentation, breach of implied covenant and good faith and fair dealing, and sought compensatory and consequential damages together with interest, attorneys' fees and costs of suit.

Polaris defended on the basis that the damage claim was limited to the $100,000 escrow and, also, that since Verma and Data had come forth with no real evidence of any damages, they would be precluded from offering evidence of damages at trial. Verma and Data urged that the liquidated damage provision pertained to the failure to complete due diligence and was not intended as the exclusive remedy for breach. Data further argued that the liquidated damages provision only applied to Verma as "SHAREHOLDER" and not to Data.

Polaris filed a motion in limine seeking a ruling from the District Court in its favor to preclude damage evidence at trial and, also, a ruling that the liquidated damage

4

provision was to be binding on Verma and Data.   The District Court granted the motion,

stating:

> Mr. Verma, in discovery and in his deposition under oath,
> cannot and has failed to set forth with any factual basis that
> would be admissible as evidence any damages claimed above
> and beyond the liquidated damages clause provision in the
> memorandum, I would preclude any damages claim, any
> evidence of any damages because there simply isn't any
> evidentiary support for one.

Appx. 25A.

The case was then ready for trial.  However, the parties decided to enter into a

consent agreement ("Consent Agreement") whereby they would seek review of the

District Court's in limine ruling.   The Consent Agreement, which was thereafter entered

by the District Court as a consent judgment (the "Consent Judgment") stated as follows:

> 1.  The plaintiffs' breach of contract claim for liquidated
> damages under the MOU and Polaris' breach of contract
> counterclaim for liquidated damage sunder the MOU be and
> are hereby voluntarily dismissed pursuant to Federal Rule of
> Civil Procedure 41, without any admission of wrongdoing or
> liability by either party.
>
> 2.  If the plaintiffs appeal from the trial court's Order dated
> November 27, 2001, and if that Order is affirmed, Polaris
> shall pay the plaintiffs $100,000 in liquidated damages,
> without any admission of liability or wrongdoing, in final
> settlement of the plaintiffs' claims, within sixty days of the
> order of affirmance, and all of the parties' claims in this
> matter shall be concluded.
>
> 3.  If the plaintiffs appeal from the trial court's Order dated
> November 27, 2001, and in the event that Order is reversed
> and remanded to the trial court, the plaintiffs and Polaris shall
> be permitted on remand to assert all the claims being

5

> dismissed pursuant to paragraph 1 of this Consent Judgment, and both parties shall be permitted to assert any and all defenses they may have to the other's claims, without being precluded from doing so by any principles of preclusion, including but not limited to the principles of collateral estoppel and/or res judicata, and (subject to any ruling by the Court of Appeals for the Third Circuit) the parties shall be placed in the same position that they were in prior to the entry of this Consent Judgment.

Appx. 3A-4A.

Thereupon, an appeal was taken to our court, and we dismissed for lack of jurisdiction in light of the fact that no final order had been entered in the District Court case, as further proceedings in the event of reversal were anticipated and agreed upon.

Our precedent establishes that consent orders are only final and appealable if they provide for the end of the litigation no matter the outcome on appeal. *Verzilli v. Flexon*, 295 F.3d 421, 425 (3d Cir. 2002); *accord Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 438–40 (3d Cir. 2003). Here, the Consent Judgment provided for a full trial in the event of reversal, and failed to provide at all for our dismissal. Thus, we held that it was not an appealable final order.

Thereafter, Polaris argued to the District Court that since neither of the conditions set forth in the Consent Judgment had occurred – that is, that there was no affirmance and no reversal – the case should be dismissed. The District Court agreed and the case was thereupon dismissed. This appeal then followed.

6

We conclude that in dismissing the case, the District Court misconstrued the Consent Judgment. The Consent Judgment provided for two eventualities on appeal: affirmance and reversal. In order to make the order appealable, the Consent Judgment provided for dismissal of plaintiff's claims, thus arguably ending the case. However, as we perceived on that appeal, the case was not to be over if certain things occurred. Examining the Consent Judgment, we find no mention of the eventuality that actually occurred, namely, our refusal to entertain the appeal based upon lack of finality of the District Court's order and the resulting lack of jurisdiction.

We have no doubt that the Consent Judgment was a manufactured way to obtain review of the District Court's interlocutory orders so as to avoid the need for a trial if the we affirmed, while allowing for trial if we reversed the District Court. Equally clear is the fact that the Consent Judgment was not entered into in anticipation of, nor did it provide for, a dismissal of the appeal based upon lack of jurisdiction. It anticipated only an affirmance or a reversal. Accordingly, we can find no basis for the District Court's having dismissed the case as if that had been an agreed-upon eventuality; the eventuality that actually occurred had not been contemplated or agreed upon. The manufactured "dismissal" in the Consent Judgment was a stipulated attempt to obtain finality, so as to be able to resolve the case via an appeal. Dismissal of the case following our dismissal of the first appeal was not an outcome that had been agreed upon in this situation.

7

The District Court should have recognized that the Consent Judgment was tainted by a mutual mistake: the belief that it was a final order for purposes of 28 U.S.C. § 1291. A mutual mistake renders a consent order—like any other contract—voidable. *See Lampley v. Davis Mach. Corp.*, 530 A.2d 1254, 1259–60 (N.J. Super. Ct. App. Div. 1987) (holding that settlement agreements are voidable for mutual mistake). Instead of "enforcing" the voidable Consent Judgment over Verma and Data's objection, the District Court should have declared it of no effect and allowed the parties to proceed as though it had never been entered.

Effectively, the District Court's subsequent dismissal of the case prevented the parties from considering the changed circumstances and denied them the opportunity to decide how to proceed. Clearly, all parties should then have revisited the issue of how and whether the trial should proceed, based upon the mutual mistake as to the availability of resolution by way of appeal. The District Court's failure to give Verma and Data another day in court was error.

Because of this error, we will vacate the District Court's order. In so doing, we hold that the Consent Judgment has been voided. We remand for further proceedings, leaving the parties with no final order and no binding consent agreement—the position they were in the day the District Court's *in limine* ruling was entered. Whether they proceed to trial, effect a new settlement, or engage in other dispositive motions practice, is up to them.

8

We will reach no other issue presented on appeal, because the case is to proceed in the District Court. To decide the propriety of other orders entered by the District Court now that we are remanding would be to provide review of interlocutory, non-final, orders. As we indicated on the first trip made by this case to our court, we will not do so.

Accordingly, we will VACATE the order of the District Court dismissing the case and REMAND to the District Court for further proceedings consistent with this opinion.

_____