**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1368-23

GEORGIA M. MCGINTY,
a/k/a GEORGIA M. FRASER,
and JOHN FRANCIS MCGINTY,

      Plaintiffs-Respondents,

v.

JIA WEN ZHENG, JERINSON M.
MEDRANO PERALTA, and
BRACHY FELIZDELAPAZ,

      Defendants-Respondents,

and

UBER TECHNOLOGIES, INC.,
and RAISER, LLC,

      Defendants-Appellants.

_____

          Argued September 10, 2024 – Decided September 20, 2024

          Before Judges Gilson, Firko, and Bishop-Thompson.

          On appeal from the Superior Court of New Jersey, Law
          Division, Middlesex County, Docket No. L-1085-23.

Michael R. Huston (Perkins Coie LLP) of the Arizona and District of Columbia bars, admitted pro hac vice, argued the cause for appellants (Faegre Drinker Biddle & Reath LLP, Jacob Taber (Perkins Coie LLP) of the New York bar, admitted pro hac vice, Michael R. Huston, and Samantha J. Burke (Perkins Coie LLP) of the Arizona bar, admitted pro hac vice, attorneys; Tracey Salmon-Smith, Jennifer G. Chawla, and Justin M. Ginter, of counsel and on the briefs; Jacob Taber, Michael R. Huston, and Samantha J. Burke, on the briefs).

Michael C. Shapiro argued the cause for respondents Georgia M. McGinty a/k/a Georgia M. Fraser and John Francis McGinty (Stark & Stark PC, attorneys; Evan J. Lide and Michael C. Shapiro, of counsel and on the brief).

PER CURIAM

Defendants Uber Technologies, Inc. (Uber) and Raiser, LLC (Raiser)[1] appeal from a November 22, 2023 order denying their motion to compel arbitration and to dismiss the complaint filed by plaintiffs Georgia M. McGinty and John Francis McGinty, her husband. We hold that the arbitration provision contained in the agreement under review, which Georgia[2] or her minor daughter, while using her cell phone agreed to, is valid and enforceable. We, therefore,

---

[1] According to plaintiffs' complaint, Raiser is a subsidiary of Uber. Raiser sub-licenses Uber's technology to independent drivers and pays them their wages.

[2] Parties who share a last name with other parties are referred to by their first names for ease of reference. By doing so, we intend no disrespect.

reverse the portion of the order denying arbitration of the claims against Uber and Raiser. We thus remand for entry of an order compelling plaintiffs' claims against Uber and Raiser and staying the Law Division action against defendants Jerinson M. Peralta and Brachy Felizdelapaz because the record does not establish these defendants are bound by Uber's arbitration provision. Therefore, the claims against Peralta and Felizdelapaz are stayed until completion of the arbitration proceedings.

I.

We begin by reciting the relevant facts in the motion record. In June 2015, Georgia signed up for an Uber account. Prior to requesting an Uber platform, such as Uber Rides or Uber Eats, the user must agree to Uber's Terms of Use. Throughout Georgia's relationship with Uber, she has agreed to Uber's Terms of Use, including its Arbitration Agreement. The Terms of Use were modified on January 18, 2021 (January Terms), and again on December 16, 2021 (December Terms).

Uber's January Terms

On April 1, 2021, Georgia was presented with Uber's January Terms via an in-app blocking interface, which amended her contract with Uber, including her agreement to arbitrate personal injury claims. Uber's records show that

Georgia placed a check in the box next to the statement "I have reviewed and agree to the Terms of Use" and clicked the "Confirm" button related to the January Terms. Georgia does not dispute that she agreed to the January Terms.

Uber's January Terms contain an arbitration provision, which includes exceptions to arbitration, the governing rules and procedures for arbitration, how to initiate an arbitration, a delegation clause, and a third-party beneficiary clause. The January Terms specifically state: "You acknowledge and agree that you and Uber are each waiving the right to a trial by jury."

Uber's December Terms

In December 2021, Uber revised its Terms of Use (December Terms). On January 8, 2022, Georgia was presented with a pop-up blocking screen in her Uber app presenting the updated December Terms. Uber's app was designed so that a user— such as Georgia—could not continue using the account to access Uber's services unless and until the updated Terms of Use were agreed to.

The in-app pop-up screen had a header that stated: "We've updated our terms." Below, in large, clear type, it stated: "We encourage you to read our updated Terms in full." Immediately underneath were two clickable hyperlinks to Uber's Terms of Use and Privacy Notice, which were underlined and in bright blue text. When the user clicked on the hyperlinks, they would display the then-

4

operative Terms of Use and Privacy Notice for the user to review. The screen also displayed an image of a blue pencil signing on a signature line marked by an "X."

A checkbox was underneath the hyperlinks. The only other text on the screen appeared next to the checkbox and read, in bold text: "By checking this box, I have reviewed and agree to the Terms of Use and acknowledge the Privacy Notice." It also stated: "I am at least [eighteen] years of age." Below the checkbox was a button marked "Confirm."

Uber's digital records show that on January 8, 2022, Georgia logged into her Uber account using her password, checked the box next to the statement "I have reviewed and agree to the Terms of Use," and pressed "Confirm." In their motion opposition, plaintiffs asserted that it was not Georgia but rather their minor daughter who checked that box and clicked the "Confirm" button—even though it required attesting to Uber that she was at least eighteen years old. Plaintiffs claim that their daughter, while using Georgia's phone and with Georgia's permission, confirmed her agreement to the December Terms before ordering food for plaintiffs to be delivered to them through Uber Eats.

The December Terms to which Georgia agreed—either by herself or through her daughter using her Uber account—contain an arbitration provision.

A-1368-23

That agreement provides disputes that may arise between Georgia and Uber, including disputes concerning auto accidents or personal injuries, will be resolved through binding arbitration "and not in a court of law." The agreement also provides that any disputes over arbitrability would be delegated to the arbitrator.

The first paragraph of the December Terms states in all capital letters: "PLEASE READ THESE TERMS CAREFULLY, AS THEY CONSTITUTE A LEGAL AGREEMENT BETWEEN YOU AND UBER." The first page of the agreement contains the following paragraph, in all capital letters:

> IMPORTANT: PLEASE BE ADVISED THAT THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS BETWEEN YOU AND UBER CAN BE BROUGHT, INCLUDING THE ARBITRATION AGREEMENT (SEE SECTION 2 BELOW). PLEASE REVIEW THE ARBITRATION AGREEMENT BELOW CAREFULLY, AS IT REQUIRES YOU TO RESOLVE ALL DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND, WITH LIMITED EXCEPTIONS, THROUGH FINAL AND BINDING ARBITRATION (AS DESCRIBED IN SECTION 2 BELOW). BY ENTERING INTO THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.

A-1368-23

The second page of the December Terms contains a bolded heading entitled "Arbitration Agreement" in a font size substantially larger than the surrounding text. The first sentence describes the effects of the Arbitration Agreement: "By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration Agreement."

Section (2)(a), in large, bold font "Agreement to Binding Arbitration Between You and Uber," states in relevant part that:

> [Y]ou and Uber agree that any dispute, claim or controversy in any way arising out of or relating to . . . (ii) your access to or use of the Services at any time; [or] (iii) incidents or accidents resulting in personal injury to you or anyone else that you allege occurred in connection with your use of Services . . . will be <u>settled by binding individual arbitration between you and Uber, and not in a court of law</u>.
>
> [(emphasis added).]

The arbitration provision also stated that it is governed by the Federal Arbitration Act (the FAA). 9 U.S.C. §§ 1-16.

Section 2(b) is titled "Exceptions to Arbitration" and states that, "[n]otwithstanding the foregoing, this Arbitration Agreement shall not require arbitration" of certain narrow types of claims: specifically, claims brought in small-claims court; individual sexual-assault or sexual-harassment claims; and

7

intellectual-property-right claims. The agreement clarifies that only those specific types of claims "may be brought and litigated in a court of competent jurisdiction."

Section 2(c) details the rules and procedure of an arbitration proceeding under the agreement, such as what entity would administer the arbitration, what rules apply, and how the arbitrator would be selected. Section 2(d) explains in detail the process of initiating an arbitration.

The December Terms also delegate all threshold questions of arbitrability, including the enforceability of the Arbitration Agreement, to the arbitrator:

> Delegation Clause: Only an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable. An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether the Terms are applicable, unconscionable, or illusory and any defense to arbitration, including without limitation waiver, delay, laches, or estoppel. . . .

The December Terms also contain an express third-party beneficiary provision titled in bold and in an underlined font:

> Application to Third[-]Parties: This Arbitration Agreement shall be binding upon, and shall include any

A-1368-23

claims brought by or against any third parties, including but not limited to your spouses, heirs, third-party beneficiaries and assigns, where their underlying claims arise out of or relate to your use of the Services. To the extent that any third-party beneficiary to this agreement brings claims against the Parties, those claims shall also be subject to this Arbitration Agreement.

The remaining sections of the December Terms address: (1) the services offered by Uber; (2) rules for the rider's access and use of the services; (3) the rider's agreement to pay for services and fees; (4) disclaimers, limitations of liability, and indemnification; and (5) provisions governing choice of law, notice, and assignment of rights.

## The Accident

On March 31, 2022, plaintiffs were rear seat passengers in a vehicle operated by defendant Uber driver Jia Wen Zheng. At the intersection of State Highway 130 South and State Highway 522, Zheng ran a red light and t-boned a vehicle operated by Peralta, which was owned by Felizdelapaz. As a result of the collision, Zheng's vehicle sustained extensive damage.

Additionally, plaintiffs suffered serious physical, psychological, and financial damages. Georgia sustained cervical and lumbar spine fractures, rib fractures, a protruding hernia, traumatic injuries to her abdominal wall, pelvic floor, and other physical injuries. She has undergone numerous surgeries and

other invasive procedures. Georgia, a matrimonial attorney, was unable to work between the date of the accident and April 1, 2023.

John sustained a fractured sternum and severe fractures to his left arm and wrist. He underwent open reduction and internal fixation with a bone graft to address the arm fractures, and has diminished use and sensation in his left wrist.

The Litigation

On February 23, 2023, plaintiffs filed a complaint against defendants in the Law Division. Six months later, Uber filed a motion to compel arbitration and to dismiss plaintiffs' complaint. Uber argued that Georgia first registered for an Uber account in 2015 and has used her account numerous times for Uber Rides and Uber Eats platforms. Uber maintained that when Georgia signed up for an Uber account, she agreed to Uber's Terms of Use, including the Arbitration Agreement. Therefore, she agreed to arbitrate any disputes with Uber arising out of her use of Uber's services.

Uber claimed Georgia not only agreed to its Terms of Use on January 8, 2022, but she had also previously agreed to its Terms of Use on April 1, 2021, using the "same in-app blocking interface." According to Uber, both the January and December Terms amended Georgia's contract with Uber and confirmed her agreement to arbitrate personal injury disputes.

In opposition, plaintiffs asserted they had no recollection of seeing the purported "clickbox" on January 8, 2022, and surmise it was clicked by their daughter while they packed for an upcoming ski trip. At approximately 6:15 p.m. that evening, plaintiffs recalled their daughter asked if they could order food from a particular restaurant. However, plaintiffs did not remember if their daughter ordered food independently or if Georgia assisted, but both recall their daughter hanging on to Georgia's cell phone after the order was placed to monitor the progress of the delivery.

Uber contends the "Checkbox Consent" was activated when plaintiffs' daughter was getting updates on the driver's progress because the application was refreshed. After they finished eating, Georgia certified that she got her cell phone back and tipped the driver. Georgia argued she and John never had the opportunity to see the pop-up, and it was their daughter who intentionally or unintentionally clicked on it while monitoring the delivery.

The motion court denied Uber's motion to compel arbitration, finding that the Arbitration Agreement contained in the December Terms was unenforceable under Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430 (2014). The court noted that the Arbitration Agreement "fail[ed] to clearly and unambiguously inform plaintiff of her waiver of the right to pursue her claims in a judicial

11

forum." The court determined it was unclear that "arbitration is a substitute for the right to seek relief in our court system," "and by agreeing to this provision, the parties have waived their right to a court action."

In addition, the court held that the Arbitration Agreement "lacks any specificity on what the resolution would look like or what the alternative to such resolution might be." The court reasoned that Uber's January Terms previously contained an express jury waiver provision, but the December Terms did not. A memorializing order was entered. This appeal followed.

On appeal, Uber and Raiser essentially reiterate their arguments raised before the trial court:

(1) Georgia formed an enforceable arbitration agreement with Uber through the December Terms;

(2) Georgia cannot escape her agreement with Uber by claiming that her daughter agreed to the December Terms on her behalf;

(3) If the December Terms are invalid, the January terms would still require arbitration of this dispute;

(4) The agreement is enforceable against John; and

(5) Uber did not waive its right to arbitrate with plaintiffs.

12

## II.

"We review a trial court's order granting or denying a motion to compel arbitration de novo because the validity of an arbitration agreement presents a question of law." Santana v. SmileDirectClub, LLC, 475 N.J. Super. 279, 285 (App. Div. 2023) (citing Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020)). Similarly, "[t]he issue of whether a party waived its arbitration right is a legal determination subject to de novo review." Cole v. Jersey City Med. Ctr., 215 N.J. 265, 275 (2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). "As a result, we 'need not give deference to the [legal] analysis by the trial court.'" Santana, 475 N.J. Super. at 285 (alteration in original) (quoting Goffe v Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019)). "Nonetheless, the factual findings underlying the waiver determination are entitled to deference and are subject to review for clear error." Cole, 215 N.J. at 275 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)).

"Under both the [FAA, 9 U.S.C. § 1-307,] and New Jersey law, arbitration is fundamentally a matter of contract." Antonucci v. Curvature Newco, Inc., 470 N.J. Super. 553, 561 (App. Div. 2022) (citing Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010); 9 U.S.C. § 2; NAACP of Camden Cnty. E. v.

Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)). The FAA requires courts to "place arbitration agreements on equal footing with all other contracts." Skuse, 244 N.J. at 47 (internal quotation marks omitted). "Accordingly, 'the FAA "permits states to regulate . . . arbitration agreements under general contract principles," and a court may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract."'" Antonucci, 470 N.J. Super. at 561 (quoting Atalese, 219 N.J. at 441).

In conducting our de novo review of a trial court's order granting or denying a motion to compel arbitration, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013) (citing Hojnowski v. Vans Skate Park, 187 N.J. 323, 341-42 (2006)). Indeed, "the affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes." Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 133 (2020) (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002)). "Because of the favored status afforded to arbitration, '[a]n agreement to arbitrate should be read liberally in favor of arbitration.'" Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001) (alteration in original)

(quoting Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993)). "That favored status, however, is not without limits." Ibid.

New Jersey has a long-standing policy of protecting the right to access its courts. Article I, paragraph 9 of the New Jersey Constitution provides "[t]he right of trial by jury shall remain inviolate." N.J. Const. art. I, ¶ 9. "Although rights may be waived, courts 'indulge every reasonable presumption against waiver of fundamental constitutional rights.'" Mazdabrook Commons Homeowners' Ass'n v. Khan, 210 N.J. 482, 505 (2012) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). "To be valid, waivers must be knowing, intelligent, and voluntary." Ibid.

The Supreme Court in Atalese intended "to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." Atalese, 219 N.J. at 444 (quoting Garfinkel, 168 N.J. at 132). Accordingly, the Court held that while "no prescribed set of words must be included in an arbitration clause to accomplish a waiver of rights," an enforceable arbitration clause "at least in some general and sufficiently broad way, must explain that the plaintiff is giving up [his or] her right to bring [his or] her claims in court or have a jury resolve the dispute." Id. at 447.

15

"An arbitration agreement must be the result of the parties' mutual assent, according to customary principles of state contract law."  Skuse, 244 N.J. at 48.  "Thus, 'there must be a meeting of the minds for an agreement to exist before enforcement is considered.'"  Ibid. (quoting Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319 (2019)) (internal quotation marks omitted).  "An arbitration provision is not enforceable unless the consumer has reasonable notice of its existence."  Wollen v. Gulf Stream Restoration & Cleaning, LLC, 468 N.J. Super. 483, 498 (App. Div. 2021) (citing Hoffman v. Supplements Togo Mgmt., LLC, 419 N.J. Super. 596, 609 (App. Div. 2011)).  "But a party may not claim lack of notice of the terms of an arbitration provision for failure to read it."  Santana, 475 N.J. Super. at 286.  "[A]s a general rule, 'one who does not choose to read a contract before signing it cannot later relieve himself [or herself] of its burdens.'"  Skuse, 244 N.J. at 54 (quoting Riverside Chiropractic Grp. v. Mercury Ins. Co., 404 N.J. Super. 228, 238 (App. Div. 2008)).

When reviewing a motion to compel arbitration, a court undertakes a two-prong inquiry: (1) whether there is a valid and enforceable agreement to arbitrate disputes; and (2) whether the dispute falls within the scope of the agreement.  Martindale, 173 N.J. at 86-87, 92.  "Under state law, 'if parties agree on essential terms and manifest an intention to be bound by those terms, they have created

16                                                                        A-1368-23

an enforceable contract.'" Flanzman, 244 N.J. at 135 (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)).

New Jersey courts have recognized the validity of consumer web-based contracts "for decades." Wollen, 468 N.J. Super. at 495. As we recently confirmed in Santana, "[t]he enforceability of an internet consumer contract often turns on whether the agreement is characterized as a 'scrollwrap,' 'sign-in wrap,' 'clickwrap,' or 'browsewrap'—or a hybrid version of these electronic contract types." 475 N.J. Super. at 286 (quoting Wollen, 468 N.J. Super. at 495-96). Clickwrap agreements are "routinely enforced by the courts" because "[b]y requiring a physical manifestation of assent, a user is said to be put on inquiry notice of the terms assented to." Id. at 288-89 (alteration in original) (first quoting Skuse, 244 N.J. at 55 n.2, then quoting Applebaum v. Lyft, Inc., 263 F. Supp. 3d 454, 465 (S.D.N.Y. 2017)).

The Arbitration Agreement contained in the prior January Terms explicitly mentioned the user was waiving his or her right to a jury trial. "You acknowledge and agree that you and Uber are each waiving the right to a trial by jury . . . ." The updated language in the December Terms states:

> You and Uber agree that any dispute, claim or controversy in any way arising out of or relating to . . . (ii) your access to or use of the Services at any time, [or] (iii) incidents or accidents resulting in personal

17

injury that you allege occurred in connection with your use of the Services … will be <u>settled by binding arbitration between you and Uber, and not in a court of law.</u>

[(emphasis added).[3]]

Here, plaintiffs contend that because the arbitration provisions in the December Terms did not expressly state that they were waiving their right to a jury trial, the arbitration clause does not constitute an enforceable waiver of that right.

In <u>Garfinkel</u>, the Court sustained the plaintiff's right to file a civil action alleging employment discrimination because the arbitration clause provided that "any controversy or claim arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration."  168 N.J. at 128.  That language neither indicated arbitration was out of court nor the right to jury trial was waived.

A year later, in <u>Martindale</u>, the Court refined its holding in <u>Garfinkel</u>.  In <u>Martindale</u>, the Court held that an arbitration agreement was broad enough to

---

[3]  <u>See</u> <u>Atalese</u>, 219 N.J. at 447 (holding that while "no prescribed set of words must be included in an arbitration clause to accomplish a waiver of rights," an enforceable arbitration clause "at least in some general and sufficiently broad way, <u>must explain that the plaintiff is giving up her right to bring her claims in court or</u> have a jury resolve the dispute." (emphasis added)).

cover the waiver of Law Against Discrimination (LAD) claims even when LAD was not expressly identified. 173 N.J. at 96.[4] Accordingly, the Court explained

> we [do] not require a party to "refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights. . . ." Instead, we instructed that "a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination."
>
> [Id. at 95 (quoting Garfinkel, 168 N.J. at 135).]

Following its decision in Martindale, the Supreme Court has emphasized that arbitration provisions are to be construed consistent with their plain language and it is not always necessary to expressly waive a jury trial or statutory claims. See Arafa v. Health Express Corp., 243 N.J. 147, 171-72 (2020); accord Delaney v. Dickey, 244 N.J. 466, 480 (2020). Moreover, the Court has repeatedly held that the thrust of the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -36—consistent with the FAA—is to favor arbitration by placing "arbitration agreements on an equal footing with other

---

[4] The LAD was amended effective March 18, 2019, to prohibit the waiver of any substantive or procedural right or remedy related to a claim of discrimination. That amendment applies prospectively. N.J.S.A. 10:5-12.7 (codifying L. 2019, c. 39, § 1); L. 2019, c. 39, § 6. The amendment to LAD applies to arbitration agreements governed by New Jersey law but is pre-empted when applied to an arbitration agreement governed by the FAA. See Antonucci, 470 N.J. Super. at 564-66.

A-1368-23

contacts[,] and enforce [the agreements] according to their terms." <u>Atalese</u>, 219 N.J. at 439 (quoting <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 338 (2011)). Governed by these standards, we are persuaded the court erred in denying Uber's motion to compel arbitration.

Comparing the arbitration provisions in the matter under review to those reviewed in <u>Garfinkel</u> and <u>Martindale</u>, we are convinced, based on the facts in the motion record, the language here effectuated a waiver of plaintiffs' right to a jury trial. While "jury" is no longer explicitly used in the updated December Terms, magic words are not required for enforceability and the clause clearly intimates that disputes are resolved through arbitration and no in out of court as articulated in <u>Atalese</u>.

In that vein, we are satisfied there is no ambiguity when Georgia agreed to resolve disputes related to Uber's services by binding arbitration "and not in a court of law." The provision clearly and unambiguously evidences a waiver of plaintiffs' right to pursue any claims against Uber in a court of law and obligates plaintiffs to resolve their claims through binding arbitration. Moreover, Georgia expressly agreed to binding arbitration in the January Terms and acknowledged she waived her right to a jury trial. <u>Atalese</u> does not require specific jury trial language to accomplish a waiver of rights. <u>Id.</u> at 444.

Further, the December Terms unequivocally explain "[o]nly an arbitrator, and not any federal, state, or local court" has authority to make determinations. And, the December Terms provide how and by whom an arbitrable dispute will be conducted.

III.

Next, Uber and Raiser contend that Georgia cannot escape her agreement by claiming her minor daughter agreed to the December terms on her behalf. Uber and Raiser assert actual and apparent authority was created when Georgia gave her daughter the cell phone to use her Uber account. Additionally, Uber and Raiser agree that the daughter's age regarding her capacity to enter a contract is immaterial because the daughter did not enter the Terms of Use on her own behalf; and under this basis, an infancy defense is inapplicable where the minor misrepresents he or she is an adult.

Generally, "an agent may only bind his [or her] principal for such acts that 'are within his [or her] actual or apparent authority.'" N.J. Laws.' Fund for Client Prot. v. Stewart Title Guar. Co., 203 N.J. 208, 220 (2010) (quoting Carlson v. Hannah, 6 N.J. 202, 212 (1951)). "Actual authority occurs 'when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the

21

principal wishes the agent so to act.'" Ibid. (quoting Restatement (Third) of Agency: Actual Authority § 2.01 (Am. Law Inst. 2006)). Furthermore, implied [actual] authority [exists when] "an agent is authorized to do what he [or she] may reasonably infer 'the principal desires him [or her] to do' in light 'of the principal's manifestations' and 'facts as he [or she] knows or should know them' when he [or she] acts." Lampley v. Davis Mach. Corp., 219 N.J. Super. 540, 548-49 (App. Div. 1987) (quoting Lewis v. Travelers Ins. Co., 51 N.J. 244, 251 (1968)).

The scope of the agent's implied authority is limited to only what he or she may reasonably draw from the principal's words and conduct, and the facts then known to the agent. See Kisselbach v. Cnty. of Camden, 271 N.J. Super. 558, 565 (App. Div. 1994) (citing Lampley, 219 N.J. Super. at 548-49); see also Newark Branch, NAACP v. Twp. of W. Orange, 786 F. Supp. 408, 424 (D.N.J. 1992) ("The focus is on the agent's reasonable perception of the principal's manifestations toward him [or her]."). "And if the authorization is ambiguous, the agent has authority to act in accordance with what he [or she] reasonably believes to be the wish of the principal even though it is contrary to the principal's actual intent." Lewis, 51 N.J. at 251 (citing Restatement (Second) of Agency: Interpretation of Ambiguous Instructions § 44 (Am. Law Inst. 1958)).

Importantly, "[t]he principal's unexpressed reservations and qualifications do not reduce the agent's actual authority." See Restatement (Third) of Agency: Creation of Actual Authority § 3.01 cmt. b (Am. Law Inst. 2006).

"Apparent authority arises 'when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.'" Stewart Title, 203 N.J. at 220 (quoting Restatement (Third) of Agency: Apparent Authority § 2.03 (Am. Law Inst. 2006)). "The doctrine of apparent authority 'focuses on the reasonable expectations of third parties with whom an agent deals.'" Ibid. (quoting Restatement (Third) of Agency: Agent Acts with Apparent Authority § 7.08 cmt. b (Am. Law Inst. 2006)). In either case, "direct control of principal over agent is not absolutely necessary; a court must examine the totality of the circumstances to determine whether an agency relationship existed even though the principal did not have direct control over the agent." Sears Mortg. Corp. v. Rose, 134 N.J. 326, 338 (1993) (citing 2 C.J.S. Agency § 36 (1972)).

Georgia certified that her daughter was "capable," would frequently order food, and she and John were preoccupied with packing, which supports the inference that the daughter acted knowingly on Georgia's behalf. In summary, the Arbitration Agreement is valid and delegates the threshold question of the

scope of the arbitration to the arbitrator.  Therefore, Georgia's reliance on her daughter's minority to raise an infancy defense shall be determined by the arbitrator.  Goffe, 238 N.J. at 211.

IV.

Uber and Raiser next argue that even if the December Terms fail, the January Terms control as constituting a prior existing contract and compel arbitration.  However, the December Terms explicitly state they superseded the January Terms, and included a severability provision:  "If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, . . . the unenforceable or unlawful provision shall be severed from these Terms . . . ."

We do not reach this issue because we have concluded that the December Terms constitute an enforceable Arbitration Agreement.

V.

Uber and Raiser also argue that the arbitrator, not the court, determines arbitrability here, and John is subject to arbitration as a third-party beneficiary. Because it was Georgia's Uber account that ordered the vehicle involved in the accident, Uber and Raiser claim John is a third-party beneficiary of her

agreement with Uber.  We agree with Uber and Raiser that the arbitrator should determine this issue based on the Arbitration Agreement's delegation clause.

"The determining factor as to the rights of a third[-]party beneficiary is the intention of the parties who actually made the contract."  Broadway Maint. Corp. v. Rutgers, State Univ., 90 N.J. 253, 259 (1982) (quoting Brooklawn v. Brooklawn Hous. Corp., 124 N.J.L. 73, 76-77 (E. & A. 1940)).  The December Terms provide that arbitration is binding on third party-beneficiaries.[5]

Uber and Raiser contend that the December Terms state that the "Arbitration Agreement shall be binding upon, and shall include any claims brought by or against any third parties, including but not limited to your spouses, heirs, third-party beneficiaries and assigns, where their underlying claims arise out of or relate to your use of the Services," the agreement is enforceable against John.  See also Crystal Point Condo. Inc. v. Kinsale Ins. Co., 466 N.J. Super. 471, 482 (App. Div. 2021), rev'd on other grounds, 251 N.J. 437 (2022) ("Non[-]signatories of a contract . . . may compel arbitration or be subject to arbitration if the nonparty is . . . a third[-]party beneficiary to the contract.") (second

---

[5] Per the December Terms, Uber and Raiser argue that John would also be bound as Georgia's spouse.

A-1368-23

alteration in original) (quoting <u>Mut. Benefit Life Ins. Co. v. Zimmerman</u>, 783 F. Supp. 853, 865 (D.N.J. 1992)).

Again, we are satisfied that this issue is a threshold arbitrability question. The Arbitration Agreement delegated the threshold question of the scope of the Agreement to the arbitrator. The arbitrator will therefore decide if John is subject to arbitration as a third-party beneficiary.

VI.

Plaintiffs counter Uber and Raiser waived the Arbitration Agreement because: (1) Uber's and Raiser's motion to compel arbitration was untimely; (2) Uber's answer merely mentioned arbitration in its boilerplate defenses, which did not fairly apprise plaintiffs that it intended to rely upon the Arbitration Agreement; (3) Uber and Raiser have not served discovery responses; and (4) Uber's tactics have prejudiced plaintiffs. We are unpersuaded.

[New Jersey] has a presumption against waiver of arbitration [which] can be overcome only by clear and convincing evidence that the party seeking to enforce the arbitration agreement first chose to seek relief in a different forum. <u>Spaeth v. Srinivasan</u>, 403 N.J. Super. 508, 514 (App. Div. 2008). [Courts consider various factors] to determine whether a "party's litigation conduct" is "consistent with its reserved right to arbitrate the dispute:"

(1) the delay in making the arbitration request; (2) the filing of any motions, particularly dispositive motions, and their outcomes; (3) whether the delay in seeking arbitration was part of the party's litigation strategy; (4) the extent of discovery conducted; (5) whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense, or provided other notification of its intent to seek arbitration; (6) the proximity of the date on which the party sought arbitration to the date of trial; and (7) the resulting prejudice suffered by the other party, if any. No one factor is dispositive.

[Cole, 215 N.J. at 280-281.]

Based on the totality of these factors, we conclude Uber and Raiser did not waive arbitration. Uber and Raiser did not delay in moving to compel arbitration; in fact, they pleaded the affirmative defense of contractual arbitration in their answer. The record shows Uber's counsel then reached out to plaintiffs' counsel in July 2023 to request that they agree to stay the litigation in favor of arbitration, but plaintiffs refused to agree. Uber and Raiser then promptly filed their motion to compel arbitration. Limited mandatory discovery was conducted. No arbitration or trial date had been set when the motion to compel arbitration was filed. Therefore, there was no delay or resulting prejudice.

Reversed and remanded for entry of a new order. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1368-23